UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:    THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| YOUR STANDING INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant, <br><br> and <br><br> MID CONTINENT STEEL & WIRE, INC. <br><br> Defendant-Intervenor. | Court No. 24-00055 |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S 56.2 MOTION
FOR JUDGMENT ON THE AGENCY RECORD**

                           */s/ Alexander D. Keyser*
                           Lizbeth R. Levinson
                           Brittney R. Powell
                           Alexander D. Keyser

                           FOX ROTHSCHILD LLP
                           2020 K Street, NW
                           Suite 500
                           Washington, DC  20006
                           Tel: (202) 794-1183
                           Email: akeyser@foxrothschild.com

August 26, 2024

# **TABLE OF CONTENTS**

| | | |
|---|---|---|
| TABLE OF CONTENTS | | i |
| TABLE OF AUTHORITIES | | ii-iii |
| I. | STATEMENTS PURSUANT TO RULE 56.2 | 1 |
| | A. The Administrative Decision Sought to Be Reviewed | 1 |
| | B. Statement of the Issues | 2 |
| | C. Standard of Review | 2 |
| II. | STATEMENT OF THE CASE | 3 |
| III. | ARGUMENT | 6 |
| | A. LEGAL BACKGROUND | 6 |
| | B. SAN SHING'S FINANCIAL STATEMENTS DO NOT REFLECT SALES IN THE HOME MARKET OF SUBJECT MERCHANDISE | 8 |
| |    1. San Shing's Sales Did Not Reflect Sales in the Home Market of Taiwan | 9 |
| |    2. San Shing and Your Standing Do Not Have Similar Customer Bases | 12 |
| IV. | CONCLUSION | 13 |

161978863.1

## **TABLE OF AUTHORITIES**

### **FEDERAL STATUTES**

| | |
|---|---:|
| 19 U.S.C. § 1516a(b)(1)(B)(i) | 2 |
| 19 U.S.C. § 1675 | 2 |
| 19 U.S.C. § 1677b(e)(2) | 10 |
| 19 U.S.C. § 1677b(e)(2)(A) | 6 |
| 19 U.S.C. § 1677b(e)(2)(B) | 6, 7 |
| 19 U.S.C. § 1677b(e)(2)(B)(i) | 7, 10 |
| 19 U.S.C. § 1677b(e)(2)(B)(ii) | 7, 10 |
| 19 U.S.C. § 1677b(e)(2)(B)(iii) | 8 |

### **FEDERAL CASES**

*Atl. Sugar, Ltd. v. United States,*
    744 F.2d 1556, 1562 (Fed. Cir. 1984) .......... 3

*Burlington Truck Lines, Inc. v. United States*,
    371 U.S. 156, 158 (1962) .......... 3

*Consol. Edison Co. v. NLRB*,
    305 U.S. 197, 229 (1951) .......... 2

*Husteel Co. v. United States,*
    98 F. Supp. 3d 1315 (Ct. Int'l Trade September 2, 2015) .......... 7, 9

*Hyundai Steel Company v. United States,*
    675 F. Supp. 3d 1307, 1315 (December 18, 2023) .......... 7

*Maverick Tube Corp. v. United States,*
    107 F. Supp. 3d 1318, 1340-1341 (Ct. Int'l Trade September 24, 2015) .......... 7

*Metallverken Nederland B.V. v. United States,*
    728 F. Supp. 730, 734 (Ct. Int'l Trade 1989) .......... 3

*Mid-Continent Steel and Wire, Inc. v. United States,*
    203 F. Supp. 3d 1295, 1310 (Ct. Int'l Trade January 26, 2017) .......... 7, 9

*Nucor Corp. v. United States,*
    594 F. Supp. 3d 1320, 1331-32 (CIT 2008) .......... 3

*PAM, S.p.A. v. United States,*
    582 F.3d 1336, 1339 (Fed. Cir. 2009) .......... 2

*Zhejiang DunAn Hetian Metal Co. v. United* States*,*
    652 F.3d 1333, 1341 (Fed. Cir. 2011) .......... 3, 12

161978863.1

## ADMINISTRATIVE DECISIONS

*Certain Color Television Receivers from Malaysia:*
    69 Fed. Reg. 20,592 (April 16, 2004) ..... 7

*Certain Quartz Surface Products From India:*
    88 Fed. Reg. 80,689 (Nov. 20, 2023) ..... 8

*Certain Steel Nails From Sri Lanka:*
    87 Fed. Reg. 78,933 (December 23, 2022) ..... 10

*Certain Steel Nails from Taiwan:*
    86 Fed. Reg. 35,065 (July 1, 2021) ..... 3

*Certain Steel Nails from Taiwan:*
    87 Fed. Reg. 171 (September 6, 2022) ..... 3

*Certain Steel Nails from Taiwan:*
    88 Fed. Reg. 148 (August 3, 2023) ..... 4

*Certain Steel Nails from Taiwan:*
    89 Fed. Reg. 6,503 (February 1, 2024) ..... 1

*Certain Steel Nails from the United Arab Emirates:*
    77 Fed. Reg. 17,029 (March 23, 2012) ..... 10

*Magnesium from Israel:*
    66 Fed. Reg. 49,349 (September 27, 2001) ..... 8, 12

*Utility Scale Wind Towers from Indonesia:*
    85 Fed. Reg. 40231 (June 29, 2020) ..... 8

161978863.1

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:    THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| YOUR STANDING INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant, <br><br> and <br><br> MID CONTINENT STEEL & WIRE, INC. <br><br> Defendant-Intervenor. | Court No. 24-00055 |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S
56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

On behalf of the Plaintiff Your Standing International, Inc. ("Your Standing"), a foreign producer and exporter of steel nails from Taiwan, we respectfully submit the following memorandum in support of the company's 56.2 motion for judgment on the agency record in this action.

I.   **STATEMENTS PURSUANT TO RULE 56.2(c)(2)**

   A.  **The Administrative Decision Sought to be Reviewed**

Your Standing seeks judicial review of the U.S. Department of Commerce's ("Commerce" or "the Department") final results in the administrative review of the antidumping duty ("ADD") order on certain steel nails from Taiwan, published as *Certain Steel Nails from*

1

*Taiwan: Final Results of Antidumping Duty Administrative Review, Final Determination of No Shipments, and Final Determination of No Reviewable Sales; 2021-2022*, 89 Fed. Reg. 6,503 (February 1, 2024) ("Final Results") (Public Record ("P.R.") 133). The findings and conclusions of the Final Results were set forth in an accompanying Issues and Decision Memorandum for the Final Results ("IDM"). (P.R. 128). This period of review ("POR") covered July 1, 2021, through June 30, 2022. Plaintiff Your Standing was selected as one of the mandatory respondents to participate in the administrative review and received a calculated margin based upon the information it provided to Commerce. (P.R. 24). The Final Results assigned an antidumping duty margin of 26.28% to Your Standing. (P.R. 133).

### B. Statement of the Issues

Whether Commerce's use of San Shing Fastech Corporation's ("San Shing's") financial statements as one of the sources to calculate Your Standing's constructed value ("CV") profit and indirect selling expenses was unsupported by substantial evidence and not in accordance with law.

### C. Standard of Review

When reviewing an ADD administrative review determination issued by Commerce pursuant to 19 U.S.C. § 1675, the Court must sustain Commerce's results unless they are "unsupported by substantial evidence on the record or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

Substantial evidence is "more than a mere scintilla," and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *PAM, S.p.A. v. United States*, 582 F.3d 1336, 1339 (Fed. Cir. 2009), *quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1951). In order for a determination to satisfy this standard, "{t}here must be a rational

2

connection between the facts found and the choice made." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 158 (1962); *Nucor Corp. v. United States,* 594 F. Supp. 3d 1320, 1331-32 (Ct. Int'l Trade 2008). The Court is not to reweigh the evidence or substitute its judgment for that of Commerce. *See Metallverken Nederland B.V. v. United States*, 728 F. Supp. 730, 734 (Ct. Int'l Trade 1989). It is not the Court's duty to "evaluate whether the information Commerce used was the best available, but rather whether a reasonable mind could conclude that Commerce chose the best available information." *Zhejiang DunAn Hetian Metal Co. v. United States*, 652 F.3d 1333, 1341 (Fed. Cir. 2011). Judicial review of agency action must be based on the record as a whole, and the Court must take into account "whatever in the record fairly detracts from its weight." *Atl. Sugar,* Ltd. v. United States, 744 F.2d 1556, 1562 (Fed. Cir. 1984).

II.     **STATEMENT OF THE CASE**

On July 1, 2022, Commerce published an opportunity to request an administrative review of the ADD order on *Certain Steel Nails from Taiwan. Federal Register Notice Published from USDOC to File Pertaining to Interested Parties Opportunity to Request Administrative Review*, 86 Fed. Reg. 35,065 (July 1, 2021) (P.R. 1). Two companies filed requests for an administrative review, and Commerce initiated the contested antidumping administrative review on September 6, 2022. *See Requests for Administrative Review*, (P.R. 2 and 3); *Certain Steel Nails from Taiwan: Initiation of Antidumping Administrative Review*, 87 Fed. Reg. 171 (September 6, 2022) (P.R. 13). On October 14, 2022, Commerce selected Your Standing as one of the two mandatory respondents for the administrative review. *Memo from USDOC to Office Director Pertaining to Interested Parties Respondent Selection* (P.R. 24).

Your Standing responded fully to all questionnaires and information requests issued by

3

Commerce in a complete and timely manner. On May 17, 2023, Commerce requested that the parties prepare comments on CV profit and selling expenses since it found that Your Standing had no viable home or third country market for sales of the merchandise under consideration. *Letter from USDOC to Interested Parties Pertaining to Interested Parties Request for CV Comments* (P.R. 80). The Defendant-Intervenor, Mid Continent Steel and Wire, Inc., responded to this request on May 31, 2023, providing the financial statements of several Taiwanese companies, including San Shing and Chun Yu Works & Co., Ltd. ("Chun Yu"). *Letter from Greenburg Traurig, LLP to Sec. of Commerce Pertaining to Mid Continent CV Profit Comments and Exhibit 1* ("*Mid Continent CV Profit Comments and Exhibit 1*") (P.R. 82 and 83). The Petitioner urged Commerce to use the financial statements of these companies to calculate the CV profit and selling expenses for Your Standing. *See id*. Your Standing responded to these comments on June 7, 2023. *Letter from Appleton Luff Pte. Ltd. to Sec. of Commerce Pertaining to Your Standing CV Profit Rebuttal Comments* ("*Your Standing Rebuttal Comments*") (P.R. 84).

On August 3, 2023, Commerce issued its preliminary results, in which it chose to use the financial statements for San Shing and Chun Yu to calculate the CV profit and selling expenses for Your Standing. *Certain Steel Nails from Taiwan: Preliminary Results of Antidumping Duty Administrative Review, Preliminary Determination of No Shipments, Preliminary Determination of No Reviewable Sales, and Partial Rescission of Review; 2021-2022* ("*Preliminary Results*"), 88 Fed. Reg. 148 (August 3, 2023) (P.R. 102). Commerce chose to use these companies' financial statements to calculate Your Standing's CV profit and selling expenses because it found that they were both Taiwanese producers of products comparable to the subject merchandise. *Id*. Commerce thereby used this information to calculate a preliminary antidumping duty rate of 23.16% for Your Standing. *Id*.

Your Standing underwent verification of its questionnaire responses from December 4, 2023, through December 8, 2023. *See Verification from USDOC to File Pertaining to Your Standing Verification Report* (P.R. 114). Commerce was able to verify the information provided in Your Standing's questionnaire responses and noted no discrepancies. *See id*. Following verification, the parties submitted case briefs to Commerce concerning, in part, the issue of CV profit and selling expenses. Your Standing argued that Commerce's use of San Shing's financial ratios to calculate CV profit and selling expenses in the *Preliminary Results* was improper. *Brief from Appleton Luff Pte. Ltd. to Sec. of Commerce Pertaining to Your Standing Case Brief* (P.R. 120).

Commerce issued its final IDM on January 29, 2024, and published its *Final Results* on February 1, 2024. *Decision Memo from USDOC to DAS for E&C Pertaining to Interested Parties Final Issues and Decision Memo* ("*Final IDM*") (P.R. 128); *see also Final Results* (P.R. 133). In the *Final Results*, Commerce continued to find San Shing's financial statements to be suitable for the calculation of CV profit and selling expenses. *Final IDM*. Commerce found that because over 70% of San Shing's sales were made to entities in markets outside the United States, it was appropriate to use San Shing's financial statements to calculate Your Standing's CV profit and selling expenses. *Id*. at 5. Commerce subsequently published its *Final Results* on February 1, 2024, finding a weighted-average dumping margin of 26.28% for Your Standing. *Final Results* (P.R. 133). On March 1, 2024, Your Standing filed a timely Summons to contest Commerce's *Final Results* in the antidumping administrative review. ECF 1.

### III. ARGUMENT

#### A. LEGAL BACKGROUND

In accordance with section 773(e)(2)(A) of the Tariff Act of 1930 ("the Act"), codified under 19 U.S.C. § 1677b(e)(2)(A), and longstanding practice, Commerce prefers to base CV profit and selling expenses on the "actual amounts incurred and realized by the specific exporter or producer being examined in the investigation or review for selling, general, and administrative expenses, and for profits in connection with the production and sale of a foreign like product, in the ordinary course of trade for consumption in the foreign country."[1]

When respondents in a proceeding have neither viable home nor third-country markets, the statute directs Commerce to select a suitable proxy from among three alternatives to calculate constructed value pursuant to 19 U.S.C. § 1677b(e)(2)(B). The suitable proxies under the statute are:

(i) the actual amounts incurred and realized by the specific exporter or producer being examined in the investigation or review for selling, general, and administrative expenses, and for profits, in connection with the production and sale, for consumption in the foreign country, of merchandise that is in the same general category of products as the subject merchandise,

(ii) the weighted average of the actual amounts incurred and realized by exporters or producers that are subject to the investigation or review (other than the exporter or producer described in clause (i)) for selling, general, and administrative expenses, and for profits, in connection with the production and sale of a foreign like product, in the ordinary course of trade, for consumption in the foreign country, or

(iii) the amounts incurred and realized for selling, general, and administrative expenses, and for profits, based on any other reasonable method, except that the amount allowed for profit may not exceed the amount normally realized by exporters or producers (other than the exporter or producer describe in clause (i)) in connection with the sale, for consumption in the foreign country, of merchandise that is in the same general category of products as the subject merchandise.

---

[1] *The Tariff Act of 1930*, 19 U.S.C. § 1677b(e)(2)(A) (2015).

*See* 19 U.S.C. § 1677b(e)(2)(B), *Hyundai Steel Company v. United States*, 675 F. Supp. 3d 1307, 1315 (December 18, 2023).

The Court has repeatedly held that the goal in calculating profit and selling expenses under each of the three alternatives is to approximate the home market profit and selling expenses of the respondent. *See Husteel Co. v. United States*, 98 F. Supp. 3d 1315 (Ct. Int'l Trade September 2, 2015); *Maverick Tube Corp. v. United States*, 107 F. Supp. 3d 1318, 1340-1341 (Ct. Int'l Trade September 24, 2015) (the profit and selling expense rates should reflect the home market experience of the respondent); *Mid-Continent Steel and Wire, Inc. v. United States*, 203 F. Supp. 3d 1295, 1310 (Ct. Int'l Trade January 26, 2017) (Commerce's mandate is to estimate a profit and selling expense rate that the respondent would have realized from sales in its home market). The law requires the use of home market data to calculate profit and selling expenses where such data is available and usable (*i.e.* does not compromise business proprietary information).

In this case, Commerce was not able to calculate CV profit and selling expenses using either subsection (i) or (ii) of 19 U.S.C. § 1677b(e)(2)(B). Subsection (i) was unavailable because Your Standing did not have viable sales in the same general category as subject merchandise in the home market during the POI and subsection (ii) was unavailable because Your Standing did not have a viable domestic market.[2] Thus, Commerce was required to calculate CV profit and selling expenses using any reasonable method under 19 U.S.C. § 1677b(e)(2)(B)(iii) subject to the profit cap limit.

In selecting from among available financial data pursuant to 19 U.S.C.

---

[2] *Response from Appleton Luff Pte. Ltd. to Sec. of Commerce Pertaining to Your Standing Sec. A Questionnaire* ("*Your Standing Section A Response*") at 11 (P.R. 38); *Request for C.V. Comments* (P.R. 80).

§ 1677b(e)(2)(B)(iii), Commerce's long-standing practice established under *Magnesium from Israel* and *CTVs from Malaysia* is to weigh several factors. *See Notice of Final Determination of Sales at Less than Fair Value: Pure Magnesium From Israel* ("*Magnesium from Israel*"), 66 Fed. Reg. 49,349 (September 27, 2001) and accompanying IDM at Comment 8; *see also Notice of Final Determination of Sales at Not Less Than Fair Value: Certain Color Television Receivers from Malaysia*, 69 Fed. Reg. 20,592 (April 16, 2004), and accompanying IDM ("*CTVs Malaysia*"). Among them are: (1) the similarity of the potential surrogate company's business operations and products to the respondents; (2) the extent to which the financial data of the surrogate company reflects sales in the United States as well as the home market; (3) the contemporaneity of the surrogate data in the period in question; and (4) the similarity of the customer base (*i.e.*, retail versus OEM).³ It is thereby Commerce's practice to choose financial data that is both specific to the subject merchandise, contemporaneous with the POR, and reflects the experience of profitable producers of the subject merchandise.⁴

### B. SAN SHING'S FINANCIAL STATEMENTS DO NOT REFLECT SALES IN THE HOME MARKET OF SUBJECT MERCHANDISE

Commerce's decision to include San Shing's financial statements in the calculation of Your Standing's CV profit and selling expenses was not supported by substantial evidence. San Shing's financial statements contained several factors that made it an unsuitable surrogate for Your Standing. First, San Shing's sales did not reflect sales in the home market of Taiwan.

---

³ *Magnesium From Israel* and accompanying IDM at Comment 8; *see also CTVs from Malaysia* and accompanying IDM; *Final Affirmative Determination in the Less-Than-Fair Value Investigation of Utility Scale Wind Towers from Indonesia* ("*Utility Scale Wind Towers from Indonesia*"), 85 Fed. Reg. 40231 (June 29, 2020), and accompanying IDM at Comment 7 (selecting financial statements for calculation of CV profit that were contemporaneous with the POI, and were for a producer in the home market of comparable merchandise).
⁴ *See Certain Quartz Surface Products From India: Final Results of Antidumping Duty Administrative Review, and Final Determination of No Shipments; 2021– 2022,* 88 Fed. Reg. 80,689 (Nov. 20, 2023) and accompanying IDM at Comment 1.

Second, San Shing's customer base is not similar to Your Standing's customer base. Therefore, Commerce should have calculated Your Standing's CV profit and selling expenses using exclusively Chun Yu's financial statements.

### 1. San Shing's Sales Did Not Reflect Sales in the Home Market

The first factor that renders San Shing an unsuitable surrogate for Your Standing it that its financial statements did not reflect sales in the home market of Taiwan. In the *Final Results*, Commerce found the use of San Shing's financial statements to calculate Your Standing's CV profit and selling expenses was appropriate despite its low number of sales in the home market.[5] Commerce justified this erroneous determination by stating that San Shing's sales were neither predominantly nor exclusively sales to the U.S. that were affected by dumping.[6] By ignoring that San Shing largely did not sell merchandise to Taiwan during the POR, Commerce failed to meet the statutory mandate for calculating CV profit and selling expenses, which is to approximate Your Standing's profit and selling expenses in the Taiwan market.[7]

The statute requires Commerce to reject financial statements in which the surrogate company predominantly or exclusively sold merchandise to the United States.[8] Commerce determined here that it was reasonable to use San Shing's financial statements despite its significant sales to the United States because its sales were not *predominantly or exclusively* to the United States.[9] Commerce subsequently erred, however, in determining that the surrogate company's financial statements approximated the home market profit and selling expenses of the respondent, Your Standing.[10] Commerce largely ignored the fact that San Shing did not have

---

[5] *Final Results* at 7 (P.R. 133).
[6] *Id*.
[7] *Mid-Continent Steel and Wire, Inc. v. United States*, 203 F. Supp. 3d 1295, 1310.
[8] *Final Results* at 7 (P.R. 133).
[9] *Id*.
[10] *See Husteel Co. v. United States*, 98 F. Supp. 3d 1315.

substantial sales in the home market of Taiwan during the POR. Therefore, its profit and selling expenses did not reflect the experience of a Taiwanese producer of subject merchandise selling in the home market.

San Shing sold merchandise to multiple markets during the POR, including the United States, Germany, and Taiwan. In 2022, 89.78% of San Shing's total sales were export sales.[11] Of those export sales, 27.52% were made to the United States, 24.46% were made to Germany, and 37.80% were made to other markets.[12] Notably, the United States was San Shing's largest singular market in 2022. Only 10.22% of San Shing's sales were actually made in the home market of Taiwan.

In many of its prior determinations, Commerce has declined to calculate CV profit using the financial statements of companies whose sales revenue consisted largely of export sales, since those companies' sales would not reflect the sale of subject merchandise in the foreign country.[13] The inclusion of San Shing's financial statements in the calculation of Your Standing's CV profit and selling expenses distorted Commerce's calculations, and caused them not to reflect the production and sale of the subject merchandise in the *foreign country* of Taiwan.[14] San Shing's financial statements simply do not provide a reasonable estimate of the

---

[11] *Mid Continent CV Profit Comments and Exhibit 1* (P.R. 83) Exhibit 4 at 62.
[12] *Id.*
[13] *See Magnesium from Israel* and accompanying IDM at Comment 8 (In this proceeding, three companies' financial statements were provided to determine the CV profit rate. Commerce chose to use one company's financial statements and not the other two because that company had significant home market sales compared to the other two companies. The majority of all three companies' sales were export sales, but the financial statements Commerce chose to use belonged to the company with the most home market sales); *Certain Steel Nails from the United Arab Emirates: Final Determination of Sales at Less Than Fair Value* ("*Steel Nails from the UAE*"), 77 Fed. Reg. 17,029 (March 23, 2012) and accompanying Issues and Decision Memorandum at Constructed Value Profit.
[14] 19 U.S.C. § 1677b(e)(2); *see also* 19 U.S.C. § 1677b(e)(2)(B)(i)-(ii); *Certain Steel Nails From Sri Lanka: Final Negative Determination of Sales at Less Than Fair Value*, 87 Fed. Reg. 78,933 (December 23, 2022) and accompanying Issues and Decision Memorandum at Comment 1

profit and selling expenses of a company primarily engaged in the sale of the subject merchandise in Taiwan. As a company that primarily exports its merchandise, San Shing's financial statements approximate the experience of a company primarily engaged in sales of merchandise to foreign markets, not in the home market. With only 10.22% of its total sales representing sales to Taiwan, it is simply implausible to claim that San Shing's financial statements represent what Your Standing's profit and selling expenses would have been in the Taiwan market.

Further exacerbating the issues with San Shing's financial statements is that it did not break out sales based on product category to its various sales markets.[15] As discussed further below, San Shing produces merchandise not comparable to the merchandise under consideration, including machinery and tooling products.[16] These other market segments consist of 17.80% of San Shing's total profits in 2022.[17] San Shing also reported that it largely sells most of its fastener merchandise, in the form of automotive bolts, to carmakers in Europe and the United States.[18] Therefore, it is highly plausible that San Shing's sales to the Taiwan market consisted of sales of this non-comparable merchandise. There is no certainty from these financial statements that San Shing sold any comparable merchandise to Taiwan during the POR. This would mean that even less than 10.22% of San Shing's total sales might represent sales of comparable merchandise to the Taiwan market.

While it was appropriate for Commerce to analyze the volume of San Shing's sales to the United States, its determination ignored an equally important part of the analysis – San Shing's

---

(Commerce used certain financial statements to calculate CV profit and selling expenses because they better reflected the sales of comparable merchandise in the Sri Lankan home market).
[15] *Mid Continent CV Profit Comments and Exhibit 1* (P.R. 83) at Exhibit 4 p. 62.
[16] *Id*.
[17] *Id*.
[18] *Id*. at Exhibit 3.

11

lack of home market sales of comparable merchandise.[19]  Commerce failed to engage in any meaningful analysis of how San Shing's financial statements could possibly approximate sales in the home market of Taiwan when they do not show any significant sales of comparable merchandise to Taiwan.  Commerce's only justification for failing to engage in this analysis seems to be based on a finding that no financial statements on the record provide evidence of predominant sales to Taiwan.[20]  This justification, however, does not support Commerce's failure to engage in any meaningful analysis of San Shing's lack of sales to the Taiwan market.[21]  A reasonable mind could not conclude that Commerce chose the best available information when it claims that a company without significant sales of comparable merchandise to Taiwan approximates the home market profit experience of Your Standing.[22]

### 2. San Shing and Your Standing Do Not Have Similar Customer Bases

The second factor that renders San Shing an unsuitable surrogate for the calculation of Your Standing's CV profit and selling expenses is that it did not sell merchandise to the same types of customers.  In the analysis established by *Magnesium from Israel*, 66 Fed. Reg. 49349 and *Certain Color Television Receivers from Malaysia*, 69 Fed. Reg. 20592, Commerce is to consider the similarity of the potential surrogate company's customers to the customers of the respondent.  During the POR, San Shing largely sold fastener merchandise in the form of automotive bolts, with the fastener segment of its business representing approximately 82.19% of its total profits.[23]  These automotive bolts were largely sold to end-users, such as carmakers, in

---

[19] *Final Results* at 7 (P.R. 133).
[20] *Id*.
[21] *Id*.
[22] *Zhejiang DunAn Hetian Metal Co. v. United* States, 652 F.3d 1333, 1341 (Fed. Cir. 2011).
[23] *Id*. at Exhibit 4 p. 42.

Europe and the United States.[24]  Your Standing, on the other hand, only sold its merchandise during the POR through the distributor channel in the United States.[25]

Your Standing and San Shing were not selling merchandise to similar customers.  San Shing was primarily selling its merchandise to actual end users of the automotive bolts in the form of car makers, while Your Stand made sales primarily to distributors.[26]  Therefore, San Shing's financial statements do not approximate the home market profit and selling expenses of Your Standing because they do not represent sales to the same kinds of customers serviced by Your Standing.  A reasonable mind could not conclude that San Shing's financial statements were the best available information on the record where San Shing primarily sold to a different type of customer than Your Standing.  Thus, Commerce's use of San Shing's financial statements to calculate Your Standing's CV profit and selling expenses was not supported by substantial evidence.

## IV. CONCLUSION

For the foregoing reasons, the Court should find Commerce's *Final Results* to be unsupported by substantial evidence with respect to its use of San Shing's financial statements to calculate Your Standing's CV profit and selling expenses.  The Court should therefore remand this action to Commerce with instructions to recalculate Your Standing's CV profit and selling expenses relying exclusively on Chun Yu's financial statements.

---

[24] *Mid Continent CV Profit Comments and Exhibit 1* at Exhibit 4 (P.R. 83).
[25] Section A QR (BCR 7) at 11.
[26] *Compare id. with Mid Continent CV Profit Comments and Exhibit 1* at Exhibit 4 (P.R. 83).

Respectfully submitted,

*/s/ Alexander D. Keyser*
Lizbeth R. Levinson
Brittney R. Powell
Alexander D. Keyser

FOX ROTHSCHILD LLP
2020 K Street,
NW Suite 500
Washington, DC 20006
Tel: (202) 794-1183
Email: akeyser@foxrothschild.com

*Counsel to Plaintiff Your Standing International, Inc.*

August 26, 2024

14

**Word Count Certificate of Compliance**

This brief has been prepared utilizing Microsoft Word 2016 using a proportionally spaced typeface (12-point Times New Roman font).

In accordance with this Court's Scheduling Order and the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that this brief complies with the word limitations set forth therein. Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains 3,919 words. This certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

Dated: August 26, 2024

/s/ *Alexander D. Keyser*
Lizbeth R. Levinson
Brittney R. Powell
Alexander D. Keyser

FOX ROTHSCHILD LLP
2020 K Street, NW
Suite 500
Washington, DC 20006
Tel: (202) 794-1183
Email: akeyser@foxrothschild.com