**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:    THE HONORABLE CLAIRE R. KELLY, JUDGE

_____
)
YOUR STANDING INTERNATIONAL, INC.,    )
)
Plaintiff,    )
)
v.    )    Court No. 24-00055
)
UNITED STATES,    )
)    PUBLIC DOCUMENT
Defendant,    )
)
and    )
)
MID CONTINENT STEEL & WIRE, INC.,    )
)
Defendant-Intervenor.    )
_____)

**DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 56.2**
**MOTION FOR JUDGMENT UPON THE AGENCY RECORD**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

TARA K. HOGAN
Assistant Director

OF COUNSEL:
SHANNI ALON                          KATY M. BARTELMA
Attorney                             Trial Attorney
Office of the Chief Counsel          U.S. Department of Justice
  for Trade Enforcement & Compliance  Civil Division
U.S. Department of Commerce          Commercial Litigation Branch
                                     PO Box 480, Ben Franklin Station
                                     Washington, DC 20044

November 1, 2024                     Attorneys for Defendant

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:     THE HONORABLE CLAIRE R. KELLY, JUDGE

———————————————————————————
                                                              )
YOUR STANDING INTERNATIONAL, INC.,                            )
                                                              )
                                  Plaintiff,                  )
                                                              )
            v.                                                )          Court No. 24-00055
                                                              )
UNITED STATES,                                                )
                                                              )
                                  Defendant,                  )
                                                              )
and                                                           )
                                                              )
MID CONTINENT STEEL & WIRE, INC.,                             )
                                                              )
                                  Defendant-Intervenor.       )
———————————————————————————)

### **<u>ORDER</u>**

Upon consideration of the plaintiff's Rule 56.2 motion for judgment on the agency record

filed by plaintiff, the oppositions thereto, plaintiff's reply, the administrative record, and all other

pertinent papers, it is hereby

ORDERED that the plaintiff's motion is denied; and it is further

ORDERED that judgment is entered in favor of the United States.

Dated: _____, 2024          _____
          New York, New York                                    JUDGE

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 56.2 ......................................... 1

MOTION FOR JUDGMENT ON THE AGENCY RECORD ......................................... 1

STATEMENT PURSUANT TO RULE 56.2 .................................................................. 1

    I.    The Administrative Determination Under Review ............................................. 1

    II.   The Issue Presented for Review .......................................................................... 1

STATEMENT OF FACTS ............................................................................................... 2

    I.    Initial Administrative Proceedings ..................................................................... 2

    II.   Preliminary Results ............................................................................................. 3

    III.  Verification And Administrative Case Briefs ..................................................... 5

    IV.  Final Results ........................................................................................................ 6

SUMMARY OF THE ARGUMENT ............................................................................... 7

ARGUMENT ................................................................................................................... 8

    I.    Standard of Review ............................................................................................. 8

    II.   Commerce's Decision to Use San Shing's Financial Statements As A Source To Calculate Constructed Value Profit and Selling Expenses Is Supported by Substantial Evidence and In Accordance With Law ............................................................................... 9

        A.   Legal Framework for Calculating Constructed Value ................................... 10

        B.   Commerce Reasonably Relied On San Shing's Financial Statements to Calculate Constructed Value for Profit and Selling Expenses ........................................ 11

    III.  The Court Should Decline To Entertain YSI's Argument Related to San Shing's Customer Base Because YSI Failed To Exhaust Its Administrative Remedies ................................ 16

CONCLUSION ................................................................................................................ 19

CERTIFICATE OF COMPLIANCE .............................................................................. 20

# TABLE OF AUTHORITIES

**Statutes**

19 U.S.C. §§ 1677 ............................................................................................. 10

19 U.S.C. § 1677b ......................................................... 4, 5, 6, 7, 9, 10, 11, 12, 14

19 U.S.C. § 3512 ............................................................................................. 11

28 U.S.C. § 2637 ................................................................................... 16, 17, 19

**Cases**

*Atl. Sugar, Ltd. v. United States*,
    744 F.2d 1556 (Fed. Cir. 1984) ...................................................................... 9

*Boomerang Tube LLC v. United States*,
    856 F.3d 908 (Fed. Cir. 2017) ................................................................. 17, 19

*Carpenter Tech. Corp. v. United States*,
    452 F. Supp. 2d 1344 (Ct. Int'l Trade 2006) .................................................. 20

*Cleo Inc. v. United States*,
    501 F.3d 1291 (Fed. Cir. 2007) ...................................................................... 9

*Consolo v. Fed. Mar. Comm'n*,
    383 U.S. 607 (1966) ...................................................................................... 9

*Corus Staal BV v. United States*,
    502 F.3d 1370 (Fed. Cir. 2007) ................................................................. 17, 20

*Fujitsu Gen. Ltd. v. United States*,
    88 F.3d 1034 (Fed. Cir. 1996) ...................................................................... 8, 9

*Mid Continent Steel & Wire, Inc. v. United States*,
    203 F. Supp. 3d 1295 (Ct. Int'l Trade 2017) .................................................. 4, 5

*Mid Continent Steel & Wire, Inc. v. United States*,
    941 F.3d 530 (Fed. Cir. 2019) ................................................................. 12, 14

*Mid Continent Steel & Wire, Inc. v. United States*,
    519 F. Supp. 3d 1349 (Ct. Int'l Trade 2021) .................................................. 15

*PAM, S.p.A. v. United States*,
    582 F.3d 1336 (Fed. Cir. 2009) ...................................................................... 9

*Thai I-Mei Frozen Foods Co. Ltd. v. United States*,
    616 F.3d 1300 (Fed. Cir. 2010) ............................................................. 12, 14, 15

*United States v. Eurodif S.A.*,
    555 U.S. 305 (2009) ...................................................................................... 8

**Other**

*Pure Magnesium from Israel*: *Notice of Final Determination of Sales at Less Than Fair Value*, 66 Fed. Reg. 49,349 (Dep't of Commerce Sept. 27, 2001) .................................................... 4, 15

*Notice of Final Determination of Sales at Less Than Fair Value:  Certain Color Television Receivers from Malaysia*, 69 Fed. Reg. 20,592 (Dep't of Commerce April 16, 2004) ................ 4

*Certain Steel Nails from UAE: Final Determination of Sales at Less Than Fair Value*, 77 Fed. Reg. 17,029 (Dep't of Commerce March 23, 2012) ............................................................ 15, 16

*Certain Steel Nails from the Republic of Korea, Malaysia, the Sultanate of Oman, Taiwan, and the Socialist Republic of Vietnam*, 80 Fed. Reg. 39,994 (Dep't of Commerce July 13, 2015) ..... 2

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 87 Fed. Reg. 54,463 (Dep't of Commerce Sept. 6, 2022) ................................................................................. 2

*Certain Steel Nails from Taiwan:  Preliminary Results of Antidumping Duty Administrative Review, Preliminary Determination of No Shipments, Preliminary Determination of No Reviewable Sales, and Partial Rescission of Review; 2021-2022*, 88 Fed. Reg. 51,291 (Dep't of Commerce Aug. 3, 2023) ......................................................................................... 2, 3

*Certain Steel Nails from Taiwan:  Final Results of Antidumping Duty Administrative Review, Final Determination of No Shipments, and Final Determination of No Reviewable Sales; 2021-2022,* 89 Fed. Reg. 6,503 (Dep't of Commerce Feb. 1, 2024) ............................................. 1, 6, 7

## DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 56.2
## MOTION FOR JUDGMENT ON THE AGENCY RECORD

Pursuant to Rule 56.2 of the Rules of this Court, defendant, the United States, respectfully submits this response to the motion for judgment on the agency record filed by plaintiff, Your Standing International, Inc. (YSI).  YSI challenges certain aspects of the final results of the U.S. Department of Commerce's 2021-2022 administrative review of the antidumping duty order covering certain steel nails from Taiwan.  Specifically, YSI challenges Commerce's decision to use San Shing Fastech Corporation's (San Shing) financial statements to calculate the constructed value (CV) profit and selling expenses for YSI.

YSI's claims are without merit.  As demonstrated below, Commerce's final results are supported by substantial evidence and in accordance with law.  We therefore respectfully request that the Court deny plaintiff's motion and enter judgment for the United States.

## STATEMENT PURSUANT TO RULE 56.2

### I.    The Administrative Determination Under Review

Plaintiff challenges certain aspects of *Certain Steel Nails from Taiwan:  Final Results of Antidumping Duty Administrative Review, Final Determination of No Shipments, and Final Determination of No Reviewable Sales; 2021-2022*, 89 Fed. Reg. 6,503 (Dep't of Commerce Feb. 1, 2024) (P.R. 133) (*Final Results*), and the accompanying Issues and Decision Memorandum (IDM) (P.R. 128).  The period of review is July 1, 2021 through June 30, 2022.

### II.    The Issue Presented for Review

Whether Commerce's decision to use San Shing's financial statements as one of the sources to calculate YSI's constructed value profit and selling expenses is supported by substantial evidence and in accordance with law.

1

## STATEMENT OF FACTS

### I.     Initial Administrative Proceedings

In July 2015, Commerce published an antidumping duty order covering certain steel nails from Taiwan.  *Certain Steel Nails from the Republic of Korea, Malaysia, the Sultanate of Oman, Taiwan, and the Socialist Republic of Vietnam*, 80 Fed. Reg. 39,994 (Dep't of Commerce July 13, 2015).  In September 2022, upon request of defendant-intervenor, Mid Continent Steel & Wire Inc. (Mid Continent), and others, Commerce initiated an administrative review of the antidumping order, covering the period from July 1, 2021, through June 30, 2022.  *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 87 Fed. Reg. 54,463 (Dep't of Commerce Sept. 6, 2022) (P.R. 13).  Commerce selected YSI as one of the mandatory respondents.  *See Certain Steel Nails from Taiwan:  Preliminary Results of Antidumping Duty Administrative Review, Preliminary Determination of No Shipments, Preliminary Determination of No Reviewable Sales, and Partial Rescission of Review; 2021-2022*, 88 Fed. Reg. 51,291 (Dep't of Commerce Aug. 3, 2023) (*Preliminary Results*) (P.R. 102), and accompanying Preliminary Decision Memorandum (PDM) (P.R. 98).

In May 2023, Commerce requested constructed value profit and selling expense comments and information, explaining that, because YSI does not have a viable home or third country market for sales of the merchandise under consideration, Commerce was unable to calculate a constructed value for profit and selling expenses based on YSI's home market or third country sales made in the ordinary course of trade.  Commerce's Letter, "Request for Constructed Value Profit and Selling Expense Comments and Information," dated May 17, 2023 (P.R. 80).

In response, Mid Continent timely submitted comments and information for consideration in valuing constructed value profit and selling expenses. *See* Mid Continent's Letter, "Comments for Constructed Value Profit and Selling Expenses," dated May 31, 2023 (P.R. 82). Mid Continent submitted information regarding four companies it described as producers of steel nails, fasteners, or wire rod which are produced via a process almost identical to that of steel nails. *See* Mid Continent's Letter, "Comments for Constructed Value Profit and Selling Expenses," dated May 31, 2023 (P.R. 82), at 2. Two of the companies, San Shing and Chun Yu Works & Co., Ltd. (Chun Yu), are Taiwanese companies, and the other two are Indian companies. *See id.* at 2-5. Of relevance here, Mid Continent identified San Shing as a Taiwanese producer of fasteners, including bolts, nuts, and steel wire, that has sales in Taiwan, and Mid Continent provided printouts from San Shing's website showing company information and products, as well as San Shing's annual report for 2021-2022. *See id.* at 2-3; *see also id.* at Exs. 2-4.

YSI timely submitted rebuttal comments. YSI's Letter, "Reply to Petitioners' Comments," dated June 7, 2023 (P.R. 84). YSI argued that Commerce should not use the Indian companies' financial statements to value indirect selling expenses and profit ratios because that data are distorted by Indian government programs, which Commerce has countervailed in other proceedings. *See id.* at 2-5. YSI urged Commerce to instead "look to the Taiwanese companies' financial statements" in the record. *Id*. at 2, *see id*. at 5. YSI did not place on the record information for any other company.

## II.   <u>Preliminary Results</u>

On July 28, 2023, Commerce published its preliminary results. *Preliminary Results*, 88 Fed Reg. 51,291 (P.R. 102). Commerce initially determined that, because YSI does not have a

viable home or third country market during the period of review, it would use constructed value as the basis to calculate normal value for YSI. *See* PDM at 18-19 (P.R. 98). Commerce then explained that it could not calculate constructed value pursuant to the "preferred method" of 19 U.S.C. § 1677b(e)(2)(A) based on YSI's own home market or third country sales made in the ordinary course of trade. Nor could Commerce calculate constructed value based on YSI's production and sale of merchandise in the same general category, *see* 19 U.S.C. § 1677b(e)(2)(B)(i), because there was no information in the record to permit such a calculation. PDM at 19. Further, because no other exporters or producers were subject to individual examination, Commerce could not determine constructed value profit by averaging the profit ratio of those other respondents. *See id.* (discussing 19 U.S.C. § 1677b(e)(2)(B)(ii)).[1]

Therefore, Commerce calculated YSI's constructed value profit and selling expenses using "any other reasonable method," pursuant to 19 U.S.C. § 1677b(e)(2)(B)(iii). *See id.* at 19-20. Commerce explained that, when using any other reasonable method,[2] it considers potential sources for constructed value profit and selling expenses based on four factors: (1) the similarity between the potential surrogate company's business operations and products and the respondent's business operations and products; (2) the extent to which a potential surrogate company has sales in the United States and the home market; (3) the contemporaneity of the surrogate data to the period of investigation; and (4) the similarity of the customer base between

---

[1] Commerce relied on facts otherwise available with respect to two mandatory respondents, *see* IDM at comment 3; PDM at 10-13, and preliminarily determined that another mandatory respondent had no reviewable sales of subject merchandise during the period of review, *see* PDM at 9-10; *Preliminary Results*, 88 Fed. Reg. at 51,292.

[2] Commerce established this methodological framework in *Pure Magnesium from Israel: Notice of Final Determination of Sales at Less Than Fair Value*, 66 Fed. Reg. 49,349 (Dep't of Commerce Sept. 27, 2001) (*Pure Magnesium from Israel*), and accompanying IDM at comment 8; and *Certain Color Television Receivers from Malaysia: Notice of Final Determination of Sales at Less Than Fair Value*, 69 Fed. Reg. 20,592 (Dep't of Commerce April 16, 2004), and accompanying IDM at comment 26.

a potential surrogate company and the respondent.  *See id.* at 20; *see also Mid Continent Steel &*
*Wire, Inc. v. United States*, 203 F. Supp. 3d 1295, 1309 (Ct. Int'l Trade 2017) (sustaining
Commerce's use of these factors), *aff'd* 941 F.3d 530, 542-43 (Fed. Cir. 2019).

Commerce preliminarily determined that the financial statements of San Shing and Chun
Yu were the best sources available for determining the constructed value profit for YSI.  PDM at
20-21.  Commerce explained that those two financial statements are "contemporaneous with the
{period of review}, reflect the experience of profitable Taiwanese producers of nails and other
comparable merchandise, show that a significant portion of sales revenue was derived from the
domestic market, and do not reflect specific countervailable subsidy programs," thus meeting the
"criteria in that they are predominantly producers of identical or comparable merchandise and
their financial information is contemporaneous with the {period of review}."  *Id.* at 20.  As to
San Shing specifically, Commerce preliminarily found that it "is a Taiwanese producer of
fasteners, including bolts, screws, and studs, which {Commerce} find{s} to be products
comparable to the subject merchandise."  *Id*.  Commerce calculated the simple average of the
data from San Shing's and Chun Yu's[3] respective 2022 financial statements to derive YSI's
constructed value profit and selling expenses pursuant to 19 U.S.C. § 1677b(e)(2)(B)(iii).  *Id.* at
21; *see* Memorandum, "Preliminary Results Margin Calculation for Your Standing International,
Inc.," dated July 28, 2023 (C.R. 55).

III.    **Administrative Case Briefs**

Mid Continent and YSI then submitted administrative case briefs.  *See* Mid Continent's
Letter, "Case Brief," dated January 3, 2024 (C.R. 94); YSI's Letter, "Case Brief," dated January
3, 2024 (P.R. 120).  YSI, in its case brief, argued that Commerce's use of the San Shing financial

---

[3] YSI does not challenge Commerce's reliance on Chun Yu's financial statements.  *See*
*generally*, Pl Br.; Compl.

ratio data was improper because San Shing is "primarily devoted to automotive products" and "does not have material sales in the home market of Taiwan; rather, the United States is its largest market." YSI's Letter, "Case Brief," dated January 3, 2024, at 1-4 (P.R. 120). YSI argued that Commerce should instead use the financial ratio data from only Chun Yu. *Id*. at 4.

      Mid Continent timely filed a rebuttal brief. *See* Mid Continent's Letter, "Rebuttal Brief," dated January 8, 2024 (P.R. 122). Mid Continent contended that Commerce should continue to rely on the financial statements of San Shing as a source for determining constructed value because San Shing produces comparable merchandise and its sales are not predominantly in the United States. *See id.* at 2-8.

## IV.   <u>Final Results</u>

      Commerce published its final results on January 26, 2024. *Final Results*, 89 Fed. Reg. 6,503 (P.R. 133). Commerce continued to find that San Shing is a suitable source of available information on the record to calculate constructed value profit and selling expenses. IDM at 5. Commerce explained that San Shing produces comparable merchandise, and its financial statements are contemporaneous with the period of review and reflect the experience of profitable Taiwanese producers of subject merchandise and other comparable merchandise. *Id*. Commerce determined that, although YSI argued that San Shing is primarily devoted to automotive products, the information on the record indicates that San Shing is a Taiwanese producer of fastener products including nuts, bolts, washers, toolings, and machinery. Commerce explained that no information on the record demonstrates that San Shing is manufacturing automobile parts beyond its bolt production line, one of the types of fasteners described in its financial statement. *Id*. at 6 (citing Mid-Continent CV Comments at Ex. 3 (P.R. 82)). Commerce further explained that San Shing's financial statements indicate that the "vast

majority of San Shing's manufactured merchandise during the {period of review} was fasteners, accounting for 83 and 87 percent of revenue to external customers in 2021 and 2022, respectively." *Id.* (citing Mid-Continent CV Comments at Ex. 4 (P.R. 82)). Accordingly, Commerce continued to find that San Shing is a producer of comparable merchandise, *i.e.* fasteners, that are similar in production to YSI's steel nails. *Id.*

Commerce further determined that "the record does not demonstrate that San Shing's sales are either predominantly or exclusively U.S. sales that were potentially affected by dumping." IDM at 7. Commerce acknowledged that San Shing's financial statements reflect that the United States is its largest individually identified market but found that the financial statements also demonstrate that over 70 percent of San Shing's sales to nonaffiliated entities were to either Taiwan or third-country markets during the {period of review}. *Id.* Commerce explained that, because over 70 percent of San Shing's sales to nonaffiliated entities were made in markets outside of the United States, it disagreed with YSI's position that San Shing's financial statements should be excluded on the basis that they primarily reflect sales to the United States, particularly when no other financial statements on the record provided evidence of sales made predominantly in Taiwan. *Id.* Accordingly, Commerce continued to calculate a simple average of the data from San Shing and Chun Yu's respective fiscal year 2022 financial statements to derive YSI's constructed value profit and selling expenses pursuant to 19 U.S.C. § 1677b(e)(2)(B)(iii). *Id.*

## SUMMARY OF THE ARGUMENT

Commerce's decision to include San Shing's financial statements in its calculation of YSI's constructed value profit and selling expenses is supported by substantial evidence and is in accordance with law. Substantial evidence supports Commerce's determination that San Shing's

financial statements (along with the uncontested financial statements of Chun Yu) are the best information available and satisfy the criteria Commerce examines when evaluating financial statements for constructed value profit and selling expenses.

Although YSI disputes that San Shing's financial statements provide an appropriate basis for calculating constructed value because of the extent of San Shing's sales in the United States and in the home market, Commerce's decision to use San Shing's financial statements for this purpose was reasonable. Before this Court, YSI argues for the first time that San Shing and YSI do not have similar customer bases. YSI, however, failed to exhaust its administrative remedies with respect to its argument, and the Court should decline to entertain this argument. Accordingly, Commerce's determination to use San Shing's financial statements to calculate constructed value should be sustained.

## ARGUMENT

### I.   Standard of Review

In reviewing Commerce's antidumping duty determinations, "the Court of International Trade must sustain 'any determination, finding or conclusion found' by Commerce unless it is 'unsupported by substantial evidence on the record, or otherwise not in accordance with law.'" *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)).

"The specific factual findings on which {Commerce} relies in applying its interpretation are conclusive unless unsupported by substantial evidence." *United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009) (citation omitted)). Substantial evidence means "'more than a mere scintilla,' or 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *PAM, S.p.A. v. United States*, 582 F.3d 1336, 1339 (Fed. Cir. 2009) (quoting *Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1393 (Fed. Cir. 1997) (quoting *Consol.*

*Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938))).  Substantial evidence may be "less than the weight of the evidence," and the possibility of drawing two inconsistent conclusions from the evidence in the record does not render an agency's determination unsupported by substantial evidence.  *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).  An agency decision may not be overturned "simply because the reviewing court would have reached a different conclusion based on the same record."  *Cleo Inc. v. United States*, 501 F.3d 1291, 1296 (Fed. Cir. 2007) (citations omitted); *see also Fujitsu*, 88 F.3d at 1039 ("Antidumping and countervailing duty determinations involve complex economic and accounting decisions of a technical nature, for which agencies possess far greater expertise than courts.").  Hence, this Court will affirm Commerce's factual determinations as long as they are reasonable and supported by the record as a whole, even if there is some evidence that detracts from the agency's conclusions.  *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984).

## II.    Commerce's Decision to Use San Shing's Financial Statements As A Source To Calculate Constructed Value Profit and Selling Expenses Is Supported by Substantial Evidence and In Accordance With Law

YSI does not challenge Commerce's decision to employ "any other reasonable method" under 19 U.S.C. § 1677b(e)(2)(B)(iii), nor does it challenge the framework Commerce employed to select from among the financial statements on the record to calculate constructed value profit and selling expenses.  Rather, YSI challenges only whether substantial evidence supports Commerce's decision to use San Shing's financial statement.  Commerce's decision to base YSI's constructed value profit and selling expenses, in part, on ratios calculated using San Shing's financial statement was both reasonable and supported by substantial evidence.  As Commerce explained, San Shing produces comparable merchandise, and its financial statements are contemporaneous with the period of review and reflect the experience of profitable

Taiwanese producers of subject merchandise and other comparable merchandise. Although YSI contends that San Shing's sales do not represent sales in the home market of Taiwan because the United States is San Shing's largest market, Pl. Br. at 9-12, and because YSI and San Shing do not have similar customer bases, *id.* at 12-13, the first argument lacks merit and the second is not properly before this Court. Contrary to YSI's contentions, substantial evidence supports Commerce's determination that San Shing's sales revenue was not exclusively or predominantly from sales to the United States and that the financial statements were appropriate for inclusion in the constructed value calculation. Further, YSI did not exhaust its administrative remedies before making its present argument regarding customer base. This Court should therefore sustain Commerce's final results in its entirety.

### A. Legal Framework for Calculating Constructed Value

When calculating dumping margins, Commerce normally compares the export price (*i.e.*, the price in the United States market) of the merchandise under review to the normal value (*i.e.*, the price in the home market or in a third country market). 19 U.S.C. §§ 1677(35), 1677b(a)(1)(A)-(C). If the normal value cannot be determined on that basis – for instance, when a company does not have a viable home market or third country market – Commerce may use constructed value to approximate normal value. 19 U.S.C. § 1677b(a)(4).

Commerce's preferred method for calculating constructed value is based on the respondent's own home market or third country sales made in the ordinary course of trade. 19 U.S.C. § 1677b(e). When this preferred method is unavailable, Commerce may calculate a constructed value for profit and selling expenses under one of three alternatives. *See* 19 U.S.C. § 1677b(e)(2)(B)(i)-(iii). The statute does not establish a hierarchy for selecting among the alternatives for calculating a constructed value for profit and selling expenses. *See* Statement of

Administrative Action for Uruguay Round Agreements Act (SAA), H.R. Rep. No. 103-316, vol. I, at 840 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4176; see id. ("{T}he selection of an alternative will be made on a case-by-case basis, and will depend, to an extent, on available data.").  Accordingly, Commerce has discretion to select any of the alternative methods, depending upon the information available on the record, to use in calculating constructed value.

In the administrative review, Commerce applied "any other reasonable method," pursuant to 19 U.S.C. § 1677b(e)(2)(B)(iii), determining that the methods expressed in subsections (i) and (ii) were unavailable.  *See* PDM at 19 (P.R. 98); IDM at 5 (P.R. 128).  In doing so, Commerce's goal is to approximate the profit experience of the respondent and must choose reasonably, given the record, in selecting the data to be used in calculating constructed value.  *See Mid Continent Steel & Wire, Inc. v. United States*, 941 F.3d 530, 542 (Fed. Cir. 2019); *Thai I-Mei Frozen Foods Co. Ltd. v. United States*, 616 F.3d 1300, 1307-1308 (Fed. Cir. 2010); *see also id.* ("Unlike the first alternative, there is no limitation that data be for the specific exporter or producer, and, unlike the second alternative, there is no limitation that the data relate to foreign like products."). Therefore, Commerce analyzed the financial statements on the record based on the framework established in *Pure Magnesium from Israel* and *Certain Color Television Receivers from Malaysia*, and sustained by the courts.  *See* IDM at 5 (P.R. 128); PDM at 20-21 (P.R. 98); *see, e.g., Mid Continent Steel & Wire*, 941 F.3d at 542-43.

### B. Commerce Reasonably Relied On San Shing's Financial Statements to Calculate Constructed Value for Profit and Selling Expenses

YSI argues that Commerce's decision to use San Shing's financial statements in calculating constructed value was unreasonable because San Shing's sales did not reflect sales in the home market and therefore do not reflect what YSI's profit and selling expense would have been in the Taiwan market.  *See* Pl. Br. at 9-12.  This argument fails.  Having considered the

11

financial statements in the record in conjunction with the factors set forth its framework (similarity in products and operations, the extent to which the surrogate has sales in the United States and home market, the contemporaneity of the data, and similarity of customer base), Commerce reasonably determined that the best information available on the record to calculate constructed value included San Shing's financial statements. This determination is supported by substantial record evidence and in accordance with law; thus, it should be sustained.

Specifically, Commerce's finding that San Shing's financial statements were a reasonable source for constructed value data because San Shing's sales were not exclusively or predominantly the U.S. market is supported by substantial evidence. As Commerce explained in its final results, it "does not want to construct a normal value based on financial data that contains exclusively or predominantly U.S. sales" because it generally "seek{s} to the extent possible the home market experience" and to avoid "using profit rates drawn almost exclusively from the allegedly dumped sales under investigation, where the U.S. market is alleged to have been affected by significant dumping." IDM at 7 (P.R. 128) (internal quotations and citations omitted). Commerce found, however, that the record did not demonstrate that San Shing's sales were either predominantly or exclusively U.S. sales because, although the United States was the largest *individually* identified market, over 70 percent of San Shing's sales to non-affiliated entities were to markets outside the United States. *See* IDM at 6-7 (emphasis added) (citing Mid Continent's CV Comments at Ex. 4 (page 62) (P.R. 82)). San Shing's financial statements reflect that over 70 percent of San Shing's sales to non-affiliated entities were made either to Taiwan or third country markets, while under 30 percent of the sales were made to the United States. *See* Mid Continent's Letter, "Comments for Constructed Value Profit and Selling

Expenses," dated May 31, 2023 at Ex. 4 (P.R. 82). Accordingly, substantial evidence supports Commerce's conclusion.

YSI incorrectly contends that Commerce's use of San Shing's financial statements "did not reflect sales in the home market of Taiwan," Pl. Br. at 9. As YSI acknowledges, over 10 percent of San Shing's sales in 2022 were in its home market of Taiwan. *See id.* at 10; Mid Continent's Letter, "Comments for Constructed Value Profit and Selling Expenses," dated May 31, 2023 at Ex. 4 at page 62 (P.R. 82). And while YSI asserts, without elaboration, that this level of home market sales renders it "implausible" for San Shing's financial statements to represent YSI's constructed value, Pl. Br. at 10-11, it offers no reason to think this one piece of sales data is conclusive, given the other evidence in the record and the other factors Commerce considered. For example, Commerce reviewed record information from San Shing's webpage, which showed the similarity in San Shing's business operations and products as a Taiwanese producer of fastener products, as well as other portions of San Shing's financial statements, which showed that over 80 percent of its sales revenue from external customers during the period of review was from fasteners. *See* IDM at 6 (citing Mid-Continent CV Comments at Ex. 3 and Ex. 4).

Moreover, YSI cites no authority that requires Commerce to select financial statements containing only a certain percentage of home market sales or to exclude financial statements simply because the company made non-home market sales. We are unaware of any such brightline requirements. Rather, Commerce's determination as to what data to use when calculating constructed value using "any other reasonable method," 19 U.S.C. § 1677b(e)(2)(B)(iii), must be reasonable in light of the data available and the circumstances. *See Thai I-Mei Frozen Foods Co. Ltd. v. United States*, 616 F.3d 1300, 1307-1308 (Fed. Cir. 2010); *see also id.* ("Unlike the first alternative, there is no limitation that data be for the specific

exporter or producer, and, unlike the second alternative, there is no limitation that the data relate to foreign like products."); *Mid Continent Steel & Wire, Inc.*, 519 F. Supp. 3d 1349, 1357 (Ct. Int'l Trade 2021).

YSI supports its argument by citing, without elaboration, other administrative proceedings where Commerce declined to use certain financial statements. *See* Pl. Br. at 10. These other proceedings do not assist YSI, because Commerce merely followed its practice here. For example, in *Pure Magnesium from Israel*, Commerce observed that two companies had "significant levels" of home market sales yet a majority of sales were export sales, before going on to select one company with the most similar production process and product mix and more contemporaneous data. *See Pure Magnesium from Israel*, IDM at Comment 8. And in *Certain Nails from the UAE*, Commerce observed that it could not quantify for either UAE company in question the amount of product or services sold in the United States or in the home market, ultimately selecting as the best source the company with the more similar business operations and products. *See Certain Steel Nails from UAE: Final Determination of Sales at Less Than Fair Value*, 77 Fed. Reg. 17,029 (Dep't of Commerce March 23, 2012), and accompanying IDM at Comment 6. Thus, while these proceedings might illustrate the basic proposition that Commerce must identify the best information available on the record, they do not undermine Commerce's determination here. San Shing's sales are similar to those discussed in *Pure Magnesium from Israel*, in that San Shing had sales in the home market and a majority of sales were export sales, a similar product mix, and contemporaneous data, reflecting Commerce's effort to make a reasonable choice within the constraints of the record before it.

Here, as one part of its broader determination that San Shing's financial statements were a suitable source of information in calculating constructed value, Commerce considered San

Shing's sales data.  Commerce determined that its sales levels did not mandate exclusion from the constructed value calculation, particularly because no financial statements available on the record reflected evidence of sales made predominantly in Taiwan.  *See* IDM at 7.  Commerce therefore found that San Shing's financial statements showed that the vast majority of its sales revenue was from reasonably comparable products and not predominantly or exclusively from sales to the U.S. market.  *See id.* (citing Mid-Continent CV Comments at Ex. 4); PDM at 20-21. Because San Shing's financial statements indeed show that most of its sales revenue was from fasteners and over 70 percent of its sales to non-affiliated entities were made to entities outside of the United States, including over 10 percent of sales in its home market, these findings are supported by substantial evidence.  *See* Mid Continent's Letter, "Comments for Constructed Value Profit and Selling Expenses," dated May 31, 2023 at Ex. 4 at page 62 (P.R. 82).  YSI cannot show that Commerce's determination lacks substantial evidence merely by emphasizing one lone sales figure it contends supports a different conclusion.  Nor does it undermine Commerce's conclusion by parsing the sales data by product category in a manner that it did not present to Commerce during the administrative review.  *Compare* Pl. Br. at 11 *with* YSI Case Brief, at 3 (P.R. 120).  Not only has YSI failed to exhaust its administrative remedies with respect to any such argument, *see* 28 U.S.C. § 2637(d), but it misleadingly relies on a few words from San Shing's website and merely speculates regarding the possible import of those few words.  Accordingly, because YSI has not shown that no reasonable mind could conclude that San Shing's financial statements were not among the best available sources of information in the record, Commerce's decision to use San Shing's financial statements in calculating constructed value should be sustained.

**III.**    **The Court Should Decline To Entertain YSI's Argument Related to San Shing's Customer Base Because YSI Failed To Exhaust Its Administrative Remedies**

YSI contends that Commerce should not have relied on San Shing's financial statements because San Shing and YSI do not have similar customer bases (the fourth factor).  *See* Pl. Br. at 12-13.  YSI did not exhaust its administrative remedies with respect to this argument.  Consequently, the Court should decline to entertain this argument.

This Court "shall, where appropriate, require the exhaustion of administrative remedies." 28 U.S.C. § 2637(d).  "This statutory mandate 'indicates a congressional intent that, absent a strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies.'"  *Boomerang Tube LLC v. United States*, 856 F.3d 908, 912 (Fed. Cir. 2017) (quoting *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007)).  By regulation, interested parties must raise in their case brief all arguments that the party deems "relevant."  *Corus Staal*, 502 F.3d at 1378 (discussing 19 C.F.R. § 351.309(c)(2)).  Interested parties therefore must exhaust administrative remedies with respect to all issues that they have notice may be decided by Commerce in its final determination or final results.  *See Boomerang Tube*, 856 F.3d at 913 (holding that the Court of International Trade abused its discretion by entertaining argument about data used to calculate constructed value where party had notice Commerce might use data to calculate constructed value profit but did not raise specific argument before Commerce).

YSI did not raise any issue related to the similarity of San Shing's customer base before the agency, despite having multiple opportunities to do so.  First, near the beginning of the review, Commerce invited interested parties to comment and submit new factual information on constructed value profit and selling expenses.  Commerce's Letter, "Request for Constructed Value Profit and Selling Expense Comments and Information," dated May 17, 2023 (P.R. 80).

16

In response to this invitation, Mid Continent submitted factual information regarding four companies, including San Shing.  *See* Mid Continent's Letter, "Comments for Constructed Value Profit and Selling Expenses," dated May 31, 2023 (P.R. 82).  Although YSI had the opportunity to submit its own preferred financial statements, YSI did not submit new factual information.  Instead, in response to Mid Continent's submission, YSI argued, among other things, that "{w}ith the availability of alternative financial data from Taiwan that better reflect actual production and sales by Taiwanese nail producers, the Department should disregard the Indian companies' financial statements."  YSI's Letter, "Reply to Petitioners' Comments," dated June 7, 2023 at 5 (P.R. 84).  YSI did not raise any concern regarding San Shing's customer base.  Thus, YSI initially supported the use of San Shing's financial statements, without raising any challenge related to the similarity of its customer base.  After considering the information presented, Commerce preliminarily determined to calculate constructed value by any other reasonable method and selected San Shing and Chun Yu as the best sources available.  *See* PDM at 19-21 (P.R. 98).

Second, although Commerce provided notice of its intent to calculate constructed value using any other reasonable method, its four-factor framework, and its view that San Shing's financial statements were among the best sources available for determining constructed value for YSI, *see* PDM at 19-21 (P.R. at 98), YSI did not raise any challenge related to customer base in its case brief, YSI's Letter, "Case Brief," dated January 3, 2024 (P.R. 120).  Instead, in its case brief, YSI argued only that San Shing's financial statements should not be used because San Shing is primarily devoted to automotive products and does not have material sales in the home market.  YSI's Letter, "Case Brief," dated January 3, 2024 at 1-4 (P.R. 120).  These arguments addressed the first two factors that Commerce weighs when considering sources for calculating

17

constructed value – the similarity between the surrogate's business operations and products and that of the respondent and the extent to which the surrogate has sales in the United States and the home market.  Again, YSI raised no concern regarding similarity of the customer base, the fourth factor, even though it knew or should have known that Commerce may consider San Shing's financial statements.  Commerce addressed the arguments raised by YSI in its final results.  *See* IDM at 5-7 (P.R. 128).

In sum, YSI was on notice of the inclusion of San Shing's financial statements in the record and Commerce's intent to use those financial statements in calculating constructed value, but it did not raise before the agency any argument that San Shing's financial statements should not be used because San Shing and YSI do not have sufficiently similar customer bases.  *See* YSI's Letter, "Case Brief," dated January 3, 2024 (P.R. 120); YSI's Letter, "Reply to Petitioners' Comments," dated June 7, 2023 (P.R. 84).  Because YSI had the opportunity to challenge the use of San Shing's financial statements on this basis during the administrative proceeding but did not do so, YSI failed to exhaust this issue.  Accordingly, the Court should not entertain this argument in the first instance.  *See* 28 U.S.C. § 2637(d); *Boomerang Tube*, 856 F.3d at 913.

Application of the exhaustion requirement is particularly appropriate where, as here, the new argument raises a fact-specific question that Commerce must exercise its expertise and discretion to resolve.  By failing to raise or brief before Commerce its contentions regarding San Shing's customer base, YSI did not put Commerce on notice to develop the record or allow the agency its opportunity to appropriately consider any such argument, and there is no indication that raising this argument would have been futile.  Because evaluating similarity of customer base is necessarily a fact-specific inquiry, application of the exhaustion requirement is especially warranted in this case.  *See Corus Staal*, 502 F.3d at 1379-80 (describing the exhaustion

requirement as grounded in Congress's delegation of authority to agencies with primary responsibility for programs and its application "with special force" in proceedings where the agency applies its "special expertise"); *e.g., Carpenter Tech. Corp. v. United States*, 452 F. Supp. 2d 1344, 1375 (Ct. Int'l Trade 2006) (entering judgment for defendant where plaintiff failed to exhaust its administrative remedies on a fact-specific issue the agency could have addressed and no futility exception applied).

## **CONCLUSION**

For these reasons, we respectfully request this Court deny YSI's motion for judgment on the agency record, sustain Commerce's final results, and enter judgment in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Tara K. Hogan
TARA K. HOGAN
Assistant Director

/s/ Katy M. Bartelma
KATY M. BARTELMA
Trial Attorney
U.S. Department of Justice
Commercial Litigation Branch
Civil Division
Ben Franklin Station
P.O. Box 480
Washington, DC 20044
Telephone: (202) 307-1438
Email: katy.m.bartelma@usdoj.gov

OF COUNSEL:
SHANNI ALON
Attorney
Office of the Chief Counsel
for Trade Enforcement & Compliance
U.S. Department of Commerce
1401 Constitution Avenue, NW
Washington, DC 20230

November 1, 2024                              *Attorneys for Defendant*

19

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Standard Chambers Procedure ¶ 2(B)(2), I hereby certify that this brief complies with the appropriate word-count limitation. According to the word-count function of the software used to prepare this brief, the brief contains 5509 words.


s/ Katy M. Bartelma
Katy M. Bartelma