## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE:    THE HONORABLE CLAIRE R. KELLY, JUDGE**

| | |
|---|---|
| YOUR STANDING INTERNATIONAL, INC., | |
| Plaintiff, | Court No. 24-00055 |
| v. | |
| THE UNITED STATES, | |
| Defendant, | |
| and | |
| MID CONTINENT STEEL & WIRE, INC. | |

## REPLY BRIEF OF PLAINTIFF YOUR STANDING INTERNATIONAL INC. IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE AGENCY RECORD

Respectfully submitted,

*/s/ Alexander D. Keyser*
Lizbeth R. Levinson
Brittney R. Powell
Alexander D. Keyser
FOX ROTHSCHILD LLP
2020 K Street,
NW Suite 500
Washington, DC  20006
Tel: (202) 794-1183
Email: akeyser@foxrothschild.com

*Counsel to Plaintiff Your Standing International, Inc.*

165386444.1

## <u>TABLE OF CONTENTS</u>

I.     SUMMARY OF THE ARGUMENT ................................................................................. 1

II.    SAN SHING'S FINANCIAL STATEMENTS FAIL TO APPROXIMATE THE HOME MARKET PROFIT EXPERIENCE OF YOUR STANDING .............................. 3

III.   YOUR STANDING DID NOT FAIL TO EXHAUST ITS ADMINISTRATIVE REMEDIES ..................................................................................................................... 7

IV.   CONCLUSION ........................................................................................................... 11

165386444.1

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Boomerang Tube LLC v. United States*,
  856 F.3d 908 (Fed. Cir. 2017)..............................................................................................7, 10

*Corus Staal BV v. United States*,
  502 F.3d 1370 (Fed. Cir. 2007).........................................................................................7

*Dorbest Ltd. v. United States*,
  604 F.3d 1363 (Fed. Cir. 2010)..........................................................................................7

*Ellwood City Forge Co. v. United States*,
  582 F.Supp.3d 1259 (Ct. Int'l Trade 2022) .........................................................................10

*Kumho Tire (Vietnam) Co., Ltd. v. United States*,
  Slip Opinion 24-115, 2024 WL 4579775 (Ct. Int'l Trade October 18, 2024).........................7

*Mid-Continent Steel and Wire, Inc. v. United States*,
  203 F.Supp.3d 1295 (Ct. Int'l Trade 2017) .........................................................................1

*Solvay Solexis SpA v. United States*,
  637 F.Supp.2d 1306 (Ct. Int'l Trade 2009) ....................................................................7, 10

*Thai I-Mei Frozen Foods Co., Ltd. v. United States*,
  616 F.3d 1300 (Fed. Cir. 2010).........................................................................................3

*Trust Chem Co. v. United States*,
  791 F.Supp.2d 1257 (Ct. Int'l Trade 2011) .........................................................................8

*Zhejiang DunAn Hetian Metal Co. v. United States*,
  652 F.3d 1333 (Fed. Cir. 2011)..........................................................................................2

**Administrative Decisions**

*Pure Magnesium from Israel: Notice of Final Determination of Sales at Less Than Fair Value*,
66 Fed. Reg. 49,349 (September 2001)……………………………………………………...3, 4, 9

*Certain Color Television Receivers from Malaysia:*
*Notice of Final Determination of Sales at Less Than Fair Value*
69 Fed. Reg. 20,592 (April 2004)…………………………………………………….......3, 4, 9, 10

*Wood Mouldings and Millwork Products from Brazil:*
*Final Negative Determination of Sales at Less Than Fair Value*
86 Fed. Reg. 70 (January 2021)…………………………………………………….....................5

165386444.1

*Certain Fabricated Structural Steel from Canada: Final Determination of Sales at Less Than Fair Value*,
85 Fed. Reg. 5,373 (January 2020)...…………………………………………...................5

**Statutes**

19 U.S.C. § 1677b(e)(2)(A) ...........................................................................................3

Tariff Act of 1930 § 773(e)(2)(B)(iii)..............................................................3, 5, 9, 10

**Other Authorities**

Rule 56.2...................................................................................................................1, 8

165386444.1

# UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE:    THE HONORABLE CLAIRE R. KELLY, JUDGE**

| | |
|---|---|
| YOUR STANDING INTERNATIONAL, INC., | |
| Plaintiff, | Court No. 24-00055 |
| v. | |
| THE UNITED STATES, | |
| Defendant, | |
| and | |
| MID CONTINENT STEEL & WIRE, INC. | |

## <u>REPLY BRIEF OF PLAINTIFF YOUR STANDING INTERNATIONAL INC. IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE AGENCY RECORD</u>

Plaintiff Your Standing International, Inc. ("Your Standing"), respectfully submits this reply brief to respond to the Defendant United States' Opposition to Plaintiff's Rule 56.2 Motion for Judgment upon the agency record (ECF 25). This reply brief is timely in accordance with the Court's Order dated August 7, 2024.

## I.    <u>SUMMARY OF THE ARGUMENT</u>

Defendant's inclusion of San Shing Fastech Corporation's financial statements in its calculation of Your Standing's constructed value ("CV") profit and selling expenses was not supported by substantial evidence. Commerce's mandate when calculating CV profit and selling expenses is to best approximate the home market profit and selling expenses of the respondent.[1]

---

[1] *Mid-Continent Steel and Wire, Inc. v. United States*, 203 F.Supp.3d 1295, 1310 (Ct. Int'l Trade 2017).

San Shing's financial statements demonstrate a minor percentage of its total sales were to the home market of Taiwan.[2]  San Shing's financial statements primarily reflect the profit experience of an exporter of comparable merchandise.  Therefore, no reasonable mind could conclude that Defendant chose the best available information since the use of San Shing's financial statements in the calculations of Your Standing's CV profit and selling expenses was not in accordance with Commerce's mandate.[3]

Your Standing also did not fail to exhaust its administrative remedies for arguments related to the differences in Your Standing's and San Shing's customer bases.  Your Standing's argument before the Court is the same as its argument before the Department of Commerce: that San Shing's financial statements should be excluded from calculating Your Standing's CV profit and selling expenses.[4]  Further, the specific argument advanced concerning the differences between Your Standing's and San Shing's customer bases is directly derived from Your Standing's arguments related to San Shing's automotive bolt product line in the administrative review.[5]  Defendant was also on notice of arguments related to the different customer bases of San Shing and Your Standing because its own established analytical framework for calculating CV profit and selling expenses requires it to compare the customer bases of the respondent and potential surrogate financial statements.

Therefore, the Court should find that Defendant's use of San Shing's financial statements in calculating Your Standing's CV profit and selling expenses was unreasonable and remand this action to Commerce with instructions to recalculate Your Standing's CV profit and selling expenses relying exclusively on Chun Yu's financial statements.

---

[2] Mid Continent CV Profit Comments and Exhibit 1 (P.R. 83) Exhibit 4 at 62.
[3] *Zhejiang DunAn Hetian Metal Co. v. United States*, 652 F.3d 1333, 1341 (Fed. Cir. 2011).
[4] *See* Your Standing Case Brief at 2-4 (P.R. 120).
[5] *Id*. at 3.

165386444.1

## II.    SAN SHING'S FINANCIAL STATEMENTS FAIL TO APPROXIMATE THE HOME MARKET PROFIT EXPERIENCE OF YOUR STANDING

In the underlying administrative review, Commerce calculated Your Standing's constructed value ("CV") profit and selling expenses pursuant to Section 773(e)(2)(B)(iii) of the Tariff Act of 1930 ("the Act").  The Court has consistently found that Commerce's mandate when calculating CV profit and selling expenses under Section 773(e)(2)(B)(iii) is to approximate the home market profit and selling expenses of the respondent.   As explained by the Federal Circuit in *Thai I-Mei Frozen Foods Co., Ltd. v. United States*, calculating CV profit and selling expenses under Section 773(e)(2)(B) is meant to mimic what the respondent's profits would have been for the production and sale of foreign like product for consumption in the foreign country.[6]

In the *Final Results* and in its arguments before the Court, Defendant fails to explain why its use of San Shing's financial statements in the calculation of Your Standing's CV profit and selling expenses was reasonable.[7]   Defendant evaluated San Shing's financial statements under the framework it established in *Pure Magnesium from Israel* and *Certain Color Television Receivers from Malaysia*.[8]   An analysis under this frameworks requires Commerce to evaluate potential surrogate financial statements based on four factors to determine the most appropriate profit rate for the respondent.  Those factors include: 1) the similarity in products and operations, 2) the extent to which the surrogate has sales in the United States and home market, 3) the contemporaneity of the data, and 4) the similarity of the customer base.[9]

---

[6] *Thai I-Mei Frozen Foods Co., Ltd. v. United States*, 616 F.3d 1300, 1307-1308 (Fed. Cir. 2010); *see also* 19 U.S.C. § 1677b(e)(2)(A).

[7] *See* Issues and Decision Memorandum for the Final Results of the Antidumping Duty Administrative Review of Certain Steel Nails from Taiwan; 2021-2022 (Jan. 26, 2024) ("Final IDM") at Comment 1 (P.R. 128); *see also* Defendant's Brief ("Br.").

[8] *See* Final IDM at Comment 1 (P.R. 128); *see also* Defendant's Br. at 15.

[9] Commerce established this methodological framework in *Pure Magnesium from Israel:*

While the Defendant's analysis followed its established framework in the Final Results, Commerce largely ignored its mandate to approximate the home market profit and selling expenses of the respondent.[10]  Specifically, Defendant emphasized that "San Shing's financial statements showed that the vast majority of its sales revenue was from reasonably comparable products and not predominantly or exclusively from sales to the United States."[11]  Neither of these factors explain how the inclusion of San Shing's financial statements in the calculation of Your Standing's CV profit and selling expenses approximates its **home market** profit and selling expenses.

In fact, San Shing's financial statements do not approximate Your Standing's profit experience in the Taiwan home market because San Shing's financial statements do not reflect significant sales to Taiwan.  San Shing sold merchandise to multiple markets during the period of review ("POR"), including the United States, Germany, and Taiwan.  Defendant notes that 70 percent of San Shing's sales were either in the Taiwanese home market or to third country markets.[12]  Such an amalgamation of San Shing's sales information blatantly distorts the information on the record and obfuscates the fact that only 10.22 percent of San Shing's total sales were sales to the home market of Taiwan in 2022.[13]

---

*Notice of Final Determination of Sales at Less Than Fair Value*, 66 Fed. Reg. 49,349 (Dep't of Commerce Sept. 27, 2001) (*Pure Magnesium from Israel*), and accompanying IDM at Comment 8; and *Certain Color Television Receivers from Malaysia: Notice of Final Determination of Sales at Less Than Fair Value*, 69 Fed. Reg. 20,592 (Dep't of Commerce April 16, 2004), and accompanying IDM at Comment 26.

[10] *See* Final IDM at Comment 1 (P.R. 128).

[11] *Id*.  Though San Shing's financial statements indicate that it did not predominantly or exclusively sell merchandise to the United States during the POR, the United States was its largest single market, representing 27.52 percent of San Shing's total sales.

[12] Defendant's Br. at 12-13, Mid Continent CV Profit Comments and Exhibit 1 (P.R. 83) Exhibit 4 at 62.

[13] Defendant's Br. at 12-13, Mid Continent CV Profit Comments and Exhibit 1 (P.R. 83) Exhibit 4 at 62.

165386444.1

Defendant would have the Court believe that 10 percent is a significant amount of San Shing's total sales and San Shing's financial statements were thereby appropriately used in the calculation of Your Standing's CV profit and selling expenses.[14]  Such a finding is not supported by Commerce's general practice in selecting surrogate financial statements under Section 773(e)(2)(B)(iii).  For example, in *Wood Mouldings and Millwork Products from Brazil*, Commerce excluded one potential surrogate financial statement from the calculation of CV profit and selling expenses when that company's home market sales represented 32 percent of its total sales.[15]  In deciding to exclude this financial statement, Commerce noted that it "generally seeks a home market profit experience to the greatest extent possible."[16]  Further, in *Certain Fabricated Structural Steel from Canada*, Commerce rejected potential surrogate financial statements in part because only 8.8 percent of the surrogate's total revenue came from sales to the home market.[17]  Commerce determined that the financial statements of the excluded surrogate did not reflect the experience of a Canadian producer of subject merchandise in home market sales.[18]

The Court does not require a bright line number to determine whether San Shing's financial statements reflect sales to the home market.  It is obvious that nearly 90 percent of San Shing's sales were export sales.[19]  Accordingly, San Shing is not a company predominantly

---

[14] Defendant's Br. at 13.

[15] *Wood Mouldings and Millwork Products from Brazil: Final Negative Determination of Sales at Less Than Fair Value,* 86 Fed. Reg. 70 (January 4, 2021) and accompanying Issues and Decision Memorandum ("IDM") at Comment 2.

[16] *Id*.

[17] *Certain Fabricated Structural Steel from Canada: Final Determination of Sales at Less Than Fair Value*, 85 Fed. Reg. 5,373 (January 30, 2020) and accompanying IDM at Comment 14.

[18] *Id*.

[19] *Mid Continent CV Profit Comments and Exhibit 1* (P.R. 83) Exhibit 4 at 62.  Specifically, 89.78 percent of San Shing's total sales were export sales.  Of those export sales 27.52 percent were to the United States, 24.46 percent were made to Germany, and 37.80 percent were made to other markets.

engaged in the sale of subject or comparable merchandise in its home market of Taiwan.[20]
Rather, San Shing is an exporter, with only a meager 10 percent of its total sales occurring in the
home market.[21]  The company even reported that its main business activities included
"manufacturing, processing, marketing, and **export** business of bolts, nuts, steel wires and
related machinery, machinery parts, tools."[22]  It is unreasonable to claim that a company that
barely sells merchandise in the Taiwan market approximates the home market profit experience
of Your Standing.

　　　　Further, the record suggests that of the 10.22 percent of San Shing's home market sales in
2022, a fraction of those sales were of subject or comparable merchandise. San Shing also
produced and sold non-subject merchandise, including machines, tools and wires.[23]  As noted in
Defendant's Brief, 80 percent of San Shing's total sales revenue was from fasteners.[24]  Similarly,
nearly 90 percent of San Shing's total sales were export sales.[25]  Further, San Shing's website
indicates that it developed comparable merchandise specifically for sale to carmakers in the
United States and Europe, suggesting that it largely sold comparable merchandise outside the
home market.[26]  These factors and the fact that San Shing's other market segments represented
17.80 percent of its total profits in 2022, indicates that San Shing's sales to the home market
included some sales of non-comparable merchandise.[27]  Thus, the evidence reasonably suggests
that San Shing's predominant sales of comparable merchandise were to export markets rather
than in the home market.   Accordingly, neither the Court nor the Defendant can be confident

---

[20] *Id*.
[21] *Id*.
[22] *Id*. at Exhibit 4 at 13.
[23] *Mid Continent CV Profit Comments and Exhibit 1* (P.R. 83) Exhibit 4 at 61-62, Exhibit 3.
[24] *See id*.; *see also* Defendant's Br. at 13.
[25] *Mid Continent CV Profit Comments and Exhibit 1* (P.R. 83) Exhibit 4 at 62.
[26] *Mid Continent CV Profit Comments and Exhibit 1* (P.R. 83) Exhibit 3 at 1.
[27] *Mid Continent CV Profit Comments and Exhibit 1* (P.R. 83) Exhibit 4 at 62.

that <u>even</u> 10 percent of San Shing's total sales were to the home market.

In sum, the San Shing surrogate financial statements do not sufficiently reflect sales of subject or comparable merchandise in the home market to approximate the home market profit experience of Your Standing.  A reasonable mind could not conclude that Commerce chose the best available information based on this record.  Defendant's analysis simply falls short of its mandate by failing to explain how San Shing's financial statements approximate the home market profit and selling expenses of Your Standing.

## III.    YOUR STANDING DID NOT FAIL TO EXHAUST ITS ADMINISTRATIVE REMEDIES

Defendant's argument that Your Standing failed to exhaust administrative remedies by allegedly not raising the differences between it and San Shing's customer bases is without merit. The administrative exhaustion doctrine generally requires that a party present all of its arguments in administrative case and rebuttal briefs to Commerce before raising those issues before the Court.[28]  The Court has found that such arguments should be made in the case and rebuttal briefs to permit the agency the opportunity to address the issue in the first instance, prior to judicial review.[29]  The doctrine of administrative exhaustion thereby serves to "protect administrative agency authority and promote judicial efficiency."[30]  The Court has held, however, that the exhaustion doctrine does not prevent a plaintiff from expanding on an argument based on the final record before the court, and that an argument raised in the underlying administrative proceeding does not need to be worded exactly as in the Court.[31]  In determining whether administrative remedies have been exhausted, the Court considers whether Commerce was put

---

[28] *Dorbest Ltd. v. United States*, 604 F.3d 1363, 1375 (Fed. Cir. 2010).
[29] *Boomerang Tube LLC v. United States*, 856 F.3d 908, 912 (Fed. Cir. 2017).
[30] *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007).
[31] *See Solvay Solexis SpA v. United States,* 637 F.Supp.2d 1306, 1309 n.2 (Ct. Int'l Trade 2009).

165386444.1

on notice of the issue.[32]

The facts of this case are similar to facts considered by the Court in *Solvay Solexis SpA v. United States*.  In that case, the Plaintiff argued in the underlying administrative proceeding that certain unaudited financial statements did not represent the most accurate costs.[33]  Before the Court, the Plaintiff argued that the financial statements did not represent the costs because the "goodwill was properly attributed to an affiliate."[34]  The Court noted that the Plaintiff's argument was not a new one, but an extension of the same issue.[35]  Therefore, the Court determined that Commerce had a chance to review the issue, and it was properly exhausted.[36]  Here, Your Standing continues to argue before the Court, as it did before the agency, that San Shing's financial statements should not be included in the calculation of CV profit and selling expenses.[37]  Your Standing's argument related to San Shing's customer base is an extension of the same issue argued before Commerce.

Further, in the underlying administrative review, Your Standing specifically argued that San Shing focused its production on automotive products, including its automotive bolt production line, and noted that San Shing "developed screws and bolts for supply to major carmakers in Europe and America."[38]  Your Standing contended that San Shing's focus on automotive parts should disqualify it as a source for financial ratios.[39]  San Shing's discussion of the different end use of automotive parts also suggests different customers. Before the Court,

---

[32] *Trust Chem Co. v. United States*, 791 F.Supp.2d 1257, 1268 n.27 (Ct. Int'l Trade 2011); *see also Kumho Tire (Vietnam) Co., Ltd. v. United States*, Slip Opinion 24-115, 2024 WL 4579775 (Ct. Int'l Trade October 18, 2024).
[33] *See Solvay Solexis SpA v. United States,* 637 F.Supp.2d at 1309 n.2.
[34] *Id*.
[35] *Id*.
[36] *Id*.
[37] *See* Your Standing Case Br. at 3 (P.R. 120); *see also* Your Standing's Rule 56.2 Br.
[38] *See* Your Standing Case Brief at 3 (P.R. 120).
[39] *Id*.

Your Standing argues that San Shing and Your Standing were not selling to similar customers because San Shing primarily sells its merchandise (in the form of automotive bolts) to car makers (end users) and Your Standing sells primarily to distributors.[40]  Your Standing is essentially making the same argument as it did in the underlying administrative review, that San Shing's focus on selling products to the automotive industry should disqualify its financial statements from Your Standing's financial ratios.[41]  Your Standing's argument is thereby a natural expansion of the argument it presented in the underlying administrative review.

Even if the Court found that this argument was not sufficiently raised in the underlying administrative review, the reasons why the Court might exclude an argument under the administrative exhaustion doctrine are not present in this case.  Defendant had the opportunity to address any argument concerning customer bases through the framework it established in *Certain Color Television Receivers from Malaysia*.[42]  Indeed, Defendant's framework under *Certain Color Television Receivers from Malaysia* shows that it had notice of the importance of comparing a potential surrogate's customer base to the respondent's.

In the administrative review, Commerce solicited new factual information concerning CV profit and selling expenses, primarily in the form of surrogate financial statements.[43]  Commerce then determined that it would calculate CV profit and selling expenses using surrogate financial statements pursuant to Section 773(e)(2)(B)(iii) of the Act.[44]  Pursuant to Commerce's

---

[40] Your Standing's Rule 56.2 Brief at 12-13.
[41] *Compare id. with* Your Standing Case Brief at 3 (P.R. 120).
[42] *Certain Color Television Receivers from Malaysia* IDM at Comment 26
[43] Commerce established this methodological framework in *Pure Magnesium from Israel: Notice of Final Determination of Sales at Less Than Fair Value*, 66 Fed. Reg. 49,349 (Dep't of Commerce Sept. 27, 2001) (*Pure Magnesium from Israel*), and accompanying IDM at Comment 8; and *Certain Color Television Receivers from Malaysia: Notice of Final Determination of Sales at Less Than Fair Value*, 69 Fed. Reg. 20,592 (Dep't of Commerce April 16, 2004), and accompanying IDM at Comment 26.
[44] Preliminary Results of the Administrative Review of the Antidumping Duty on Certain Steel

established framework under Section 773(e)(2)(B)(iii) of the Act, it considers four factors when calculating CV profit and selling expenses, including the similarity of the customer bases of the surrogate company and the respondent.[45]

     Defendant utilized its framework established in *Certain Color Television Receivers from Malaysia* to evaluate which surrogate financial statements it should use to calculate Your Standing's CV profit under Section 773(e)(2)(B)(iii) of the Act.  Defendant had the opportunity to review the differences between San Shing's and Your Standing's customer bases in its Final Results, as that is one of the factors Defendant is to consider under the *Certain Color Television Receivers from Malaysia* framework.  It is not the case that Defendant is learning about differences between Your Standing's and San Shing's customer bases for the first time. Information concerning both companies' customer bases were on the record before the Defendant during its administrative review.[46]  By using its established framework, Defendant had the opportunity to review the issue of San Shing's and Your Standing's customer bases in its Final Results, and to "rectify its own mistakes" by removing San Shing's financial statement from the calculation of Your Standing's financial ratios.[47]

     The doctrine of administrative exhaustion is only necessary where the agency did not have the opportunity to address the issue in the first instance.[48]  Here, Defendant did have that opportunity based on the record and its framework for assessing potential surrogate financial statements.  Defendant's failure to address the issue in the underlying administrative review does

---

Nails from Taiwan; 2020-2021 (Jul. 28, 2023) ("Prelim IDM") at 20 (P.R. 98)
[45] *Certain Color Television Receivers from Malaysia* IDM at Comment 26.
[46] *Compare* Your Standing's Section A QR (BCR 7) at 11 *with Mid Continent CV Profit Comments and Exhibit 1* at Exhibit 4 (P.R. 83).
[47] *See Solvay Solexis SpA v. United States,* 637 F. Supp. 2d 1309 n.2; *see also Ellwood City Forge Co. v. United States,* 582 F.Supp.3d 1259, 1273 (Ct. Int'l Trade 2022).
[48] *Boomerang Tube LLC v. United States*, 856 F.3d 908, 912 (Fed. Cir. 2017).

not mean that Your Standing failed to exhaust its administrative remedies.

**IV.     <u>CONCLUSION</u>**

For the foregoing reasons, the Court should find Commerce's Final Results are unsupported by substantial evidence on the administrative record with respect to its use of San Shing's financial statements to calculate Your Standing's CV profit and selling expenses.  The Court should therefore remand this action to Commerce with instructions to recalculate Your Standing's CV profit and selling expenses relying exclusively on Chun Yu's financial statements.

<u>Respectfully submitted,</u>

<u>*/s/ Alexander D. Keyser*</u>
Lizbeth R. Levinson
Brittney R. Powell
Alexander D. Keyser
FOX ROTHSCHILD LLP
2020 K Street,
NW Suite 500
Washington, DC  20006
Tel: (202) 794-1183
Email: akeyser@foxrothschild.com

*Counsel to Plaintiff Your Standing*
*International, Inc.*

165386444.1

## <u>Word Count Certificate of Compliance</u>

This brief has been prepared utilizing Microsoft Word 2016 using a proportionally spaced typeface (12-point Times New Roman font).

In accordance with this Court's Scheduling Order and the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that this brief complies with the word limitations set forth therein.  Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains 3,285 words. This certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.


*/s/ Alexander D. Keyser*
Lizbeth R. Levinson
Brittney R. Powell
Alexander D. Keyser

FOX ROTHSCHILD LLP
2020 K Street, NW
Suite 500
Washington, DC  20006
Tel: (202) 794-1183
Dated: November 29, 2024                Email: akeyser@foxrothschild.com