Slip Op. 25-14

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **YOUR STANDING INTERNATIONAL, INC.,** | |
| Plaintiff, | |
| v. | |
| **UNITED STATES,** | Before: Claire R. Kelly, Judge |
| Defendant, | Court No. 24-00055 |
| and | |
| **MID CONTINENT STEEL & WIRE, INC.,** | |
| Defendant-Intervenor. | |

## OPINION

[Sustaining the Department of Commerce's constructed value calculation.]

Dated: February 7, 2025

Lizbeth R. Levinson, Alexander D. Keyser, and Brittney R. Powell, Fox Rothschild LLP, of Washington D.C., for plaintiff Your Standing International, Inc.

Katy M. Bartelma, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant United States. On the brief were Patricia M. McCarthy, Director, Tara K. Hogan, Assistant Director, and Brian M. Boynton, Principal Deputy Assistant Attorney General. Of counsel was Shanni Alon, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C.

Rosa S. Jeong, Friederike S. Goergens, and Matthew L. Kanna, Greenberg Traurig, LLP, of Washington D.C., for defendant-intervenor Mid-Continent Steel & Wire, Inc. On the brief was Claudia H. Dunsch.

Kelly, Judge: Before the Court is Plaintiff, Your Standing International Inc.'s ("Your Standing") Motion for Judgment on the Agency Record. Mot. J. on the Agency R., Aug. 26, 2024, ECF No. 23 ("Pl. 56.2 Mot."); Reply Br. of Pl. Your Standing Int'l Inc. in Support [Mot. J. on the Agency R.], Nov. 29, 2024, ECF No. 26 ("Pl. Reply"). Plaintiff claims that the United States Department of Commerce's ("Commerce") use of San Shing Fastech Corporation's ("San Shing") financial statements to calculate Your Standing's constructed value ("CV") profit and indirect selling expenses is unsupported by substantial evidence and not in accordance with law. See generally Pl. 56.2 Mot. Specifically, Plaintiff argues San Shing's surrogate financial statements are unsuitable because (i) they do not reflect sales in the home market of Taiwan, and (ii) San Shing and Your Standing lack a similar customer base. Pl. 56.2 Mot. at 9, 12. The Defendant and Defendant-Intervenor, Mid-Continent Steel & Wire, Inc. ("Mid-Continent"), contend (i) San Shing's financial statements are a reasonable choice given Commerce's discretion and the information on the record, and (ii) Your Standing failed to exhaust its administrative remedies with respect to its argument that Commerce incorrectly used San Shing's financial statements because San Shing and Your Standing have different customer bases. Def. Resp. [Pl. R. 56.2 Mot. J. Upon the Agency R.] at 9, 16, Nov. 1, 2024, ECF No. 25 ("Def. Resp."); Resp. of Def.-Intv. Opp'n [Pl. Mot. J. on the Agency R.] at 13, 16, Nov. 1, 2024, ECF No. 24 ("Def.-Intv. Resp.").

Court No. 24-00055 Page 3

## BACKGROUND

On July 1, 2021, Commerce published notice giving interested parties the opportunity to request an administrative review of the antidumping duty ("ADD") order on certain steel nails from Taiwan. <u>Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity To Request Administrative Review</u>, 86 Fed. Reg. 35,065-01 (Jul. 1, 2021). Subsequently, two parties, including the Defendant-Intervenor, filed requests for an administrative review, and on September 6, 2022, Commerce initiated the ADD administrative review on certain steel nails from Taiwan. Petitioner's Request for Administrative Review, PD 2, bar code 4268474-01 (Jul. 28, 2022); Faithful and Hillman Request for Administrative Review, PD 3, bar code 4269923-01 (Aug. 1, 2022); <u>Initiation of Antidumping and Countervailing Duty Administrative Reviews</u>, 87 Fed. Reg. 54,463-01 (Sept. 6, 2022).

On October 14, 2022, Commerce selected Your Standing as one of the two mandatory respondents for the ADD administrative review. Respondent Selection Memorandum from USDOC, PD 24, bar code 4300103-01 (Oct. 14, 2022). On May 17, 2023, Commerce requested comments on CV profit and selling expenses. Request for Constructed Value Profit and Selling Expense Comments and Information from USDOC at 1, PD 80, bar code 4377743-01 (May 17, 2023) ("CV Request for Comment and Information"). Commerce determined it could not calculate CV under 19 U.S.C. § 1677b(e)(2)(A) because Your Standing had no viable home or third country market for the sales of merchandise under consideration. <u>Id.</u> Thus, Commerce provided

interested parties the opportunity to comment and submit new factual information for Commerce to calculate CV under 19 U.S.C. § 1677b(e)(2)(B). Id. On May 31, 2023, Defendant-Intervenor responded to Commerce's request and provided financial statements of two Taiwanese companies and two Indian companies, asking Commerce to use the financial statements it submitted to calculate the CV profit selling expenses for Your Standing. Petitioner's Comments for Constructed Value Profit and Selling Expenses, PDs 82—83, bar code 4382728-01 (May 31, 2023) ("Mid Continent Cmts."). On June 7, 2023, Plaintiff responded to Defendant-Intervenor's comments. Your Standing International ("YSI") Reply to Petitioners' CV Profit Comments, PD 84, bar code 4386153-01 (Jun. 7, 2023) ("YSI Reply Cmts.").

On August 3, 2023, Commerce issued its preliminary results, choosing the financial statements of San Shing and Chun Yu Works & Co., Ltd. ("Chun Yu") to calculate the CV profit and selling expenses for Your Standing. Certain Steel Nails From Taiwan: Preliminary Results of Antidumping Duty Administrative Review, Preliminary Determination of No Shipments, Preliminary Determination of No Reviewable Sales, and Partial Rescission of Review; 2021-2022, 88 Fed. Reg. 51,291-01 (Aug. 3, 2023) ("Preliminary Results"). Commerce used these two financial statements to calculate an ADD rate of 23.16% for Your Standing. Preliminary Results at 51,293.

From December 4, 2023, through December 8, 2023, Commerce verified Your Standing's responses. Verification Report of the Sales and Cost Responses of YSI

Court No. 24-00055 Page 5

from USDOC, PD 114, bar code 4481642-01 (Dec. 20, 2023). Following verification, Your Standing submitted a case brief arguing Commerce's use of San Shing's financial statements to calculate the CV profit and selling expenses was improper. YSI's Case Brief, PD 120, bar code 4484882-01 (Jan. 3, 2024) ("YSI Agency Brief").

On January 26, 2024, Commerce issued its final issues and decisions memorandum and on February 1, 2024, published its final results. <u>Certain Steel Nails From Taiwan: Final Results of Antidumping Duty Administrative Review, Final Determination of No Shipments, and Final Determination of No Reviewable Sales; 2021-2022</u>, 89 Fed. Reg. 6,503-01 (Feb. 1, 2024) ("<u>Final Results</u>"); <u>Issues and Decision Memorandum For the Final Results of the Antidumping Duty Administrative Review of Certain Steel Nails From Taiwan; 2021-2022</u>, 89 ITADOC 6,503 (Jan. 26, 2024) ("<u>Final IDM</u>"). In the Final Results, Commerce continued to use San Shing's financial statements to calculate CV profit and selling expenses because it concluded (i) San Shing produces comparable merchandise, (ii) San Shing's financial statements were contemporaneous with the period of review, and (iii) over 70% of San Shing's sales were made to entities in markets outside of the United Sates.[1] See Final IDM at 5, 7. Commerce found a weighted-average dumping margin of 26.28% for Your Standing. Final Results at 6,504.

---

[1] Commerce explains that the 70 percent of sales to "non-affiliated entities" are to markets outside of the United States. Final IDM at 7.

Court No. 24-00055 Page 6

On April 1, 2024, Plaintiff filed its complaint. Compl., Apr. 1, 2024, ECF No. 9 ("Compl."). On August 26, 2024, Plaintiff filed a motion for judgment on the agency record. See Pl. 56.2 Mot. On November 1, 2024, Defendant and Defendant-Intervenor filed their responses to Plaintiff's motion for judgment on the agency record. See Def. Resp.; see also Def.-Intv. Resp. On November 29, 2024, Plaintiff filed its reply in support of its motion for judgment on the agency record. See Pl. Reply.

**JURISDICTION AND STANDARD OF REVIEW**

This Court has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c), which grant the Court authority to review actions contesting the final determination in an administrative review of an antidumping order.

"The court shall hold unlawful any determination, finding, or conclusion found to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Huaiyin Foreign Trade Corp. (30) v. United States, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court determines whether substantial evidence exists by considering the record as a whole, including any evidence that supports or fairly detracts from the substantiality of the evidence. Huaiyin Foreign Trade Corp. (30), 322 F.3d at 1374 (quoting Atl. Sugar, Ltd. v. United States, 744 F.2d 1556, 1562 (Fed. Cir. 1984)). The possibility

that two inconsistent conclusions may be drawn from the evidence does not prevent an agency's determination from being supported by substantial evidence. Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966) (citing N.L.R.B. v. Nevada Consol. Copper Corp., 316 U.S. 105, 106 (1942)).

## DISCUSSION

Plaintiff argues that Commerce's use of San Shing's financial statements to calculate the CV rate is not supported by substantial evidence because Commerce "largely ignored the fact that San Shing did not have substantial sales in the home market of Taiwan during the POR" and that Commerce erred by using San Shing's financial statements to calculate Your Standing's CV rate because the two companies do not have similar customer bases. Pl. 56.2 Mot. at 9—10, 12. Defendant and Defendant-Intervenor respond that Commerce's decision is supported by substantial evidence because neither the statute nor regulations require Commerce to rely upon home market sales and San Shing's sales revenue was not exclusively or predominantly from sales to the United States market. Def. Resp. at 10, 13; Def.-Intv. Resp. at 11, 14. Defendant and Defendant-Intervenor further argue that the Court should decline to entertain Your Standing's argument related to the difference in customer bases because Your Standing failed to make that argument before Commerce, and therefore failed to exhaust its administrative remedies. Def. Resp. at 16; Def.-Intv. Resp. at 18.

Court No. 24-00055                                                                                                         Page 8

I. **Origin of Sales for Constructed Value Financial Statements**

When calculating CV, Commerce uses the respondent's home market or third country sales, made in the ordinary course of trade. 19 U.S.C. § 1677b(e)(1)—(2)(A). However, if the respondent does not have home market or third country sales, Commerce may calculate CV using one of three alternative methods, to be decided on a "case-by-case basis" by Commerce. 19 U.S.C. § 1677b(e)(2)(B)(i)—(iii); Statement of Administrative Action for Uruguay Round Agreements Act (SAA), H.R. Rep. No. 103-316, vol. I, at 840 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4176 ("SAA"). Subsection (iii) allows Commerce to use "any other reasonable method" to calculate the CV, if the preferred data under 19 U.S.C. § 1677b(e)(1)—(2)(A) is unavailable. 19 U.S.C. § 1677b(e)(2)(B)(iii).[2]  Subsection (iii) states:

---

[2] The rest of the Subsection provides:

> (B) if actual data are not available with respect to the amounts described in subparagraph (A), then—
> (i)     the actual amounts incurred and realized by the specific exporter or producer being examined in the investigation or review for selling, general, and administrative expenses, and for profits, in connection with the production and sale, for consumption in the foreign country, of merchandise that is in the same general category of products as the subject merchandise,
> (ii)     (ii) the weighted average of the actual amounts incurred and realized by exporters or producers that are subject to the investigation or review (other than the exporter or producer described in clause (i)) for selling, general, and administrative expenses, and for profits, in connection with the production and sale of a foreign like product, in the ordinary course of trade, for consumption in the foreign country, or

19 U.S.C. § 1677b(e)(2)(B)(i—ii).

> (iii) the amounts incurred and realized for selling, general, and administrative expenses, and for profits, based on any other reasonable method, except that the amount allowed for profit may not exceed the amount normally realized by exporters or producers (other than the exporter or producer described in clause (i)) in connection with the sale, for consumption in the foreign country, of merchandise that is in the same general category of products as the subject merchandise…

19 U.S.C. § 1677b(e)(2)(B)(iii). Subsection (iii) specifically allows Commerce to use "any other reasonable method" to calculate CV. 19 U.S.C. § 1677b(e)(2)(B)(iii). The statute limits Commerce's discretion by stating that the "amount allowed for profit may not exceed the amount normally realized by exporters or producers." 19 U.S.C. § 1677b(e)(2)(B)(iii). This limitation contains no geographical restriction. See 19 U.S.C. § 1677b(e)(2)(B)(iii); see, e.g., Thai I-Mei Frozen Foods Co., Ltd v. United States, 31 C.I.T. 334, 345 (Ct. Int'l Trade 2007); see also SAA at 4176 ("The Administration intends that the selection of an alternative will be made on a case-by-case basis, and will depend, to an extent, on available data"). Further, Subsection (iii) does not require that data be for the specific exporter or producer or that the data relate to foreign-like products. Thai I-Mei Frozen Foods Co., Ltd. v. United States, 616 F.3d 1300, 1308 (Fed. Cir. 2010).

As a matter of practice, when determining the CV of imported merchandise under 19 U.S.C. § 1677b(e)(2)(B)(iii), Commerce weighs several factors, one of which involves whether sales occur in the home market or the United States:

> (1) the similarity of the potential surrogate company's business operations and products to the respondent; (2) the extent to which the financial data of the surrogate company reflects sales in the United States as well as the home market; (3) the contemporaneity of the

Court No. 24-00055                                                                                             Page 10

surrogate data to the POI; and (4) the similarity of the customer base (i.e., retail versus OEM).

Issues and Decision Memorandum For the Antidumping Duty Investigation of Certain Color Television Receivers From Malaysia, 69 ITADOC 20,592 at cmt. 26 (Apr. 16, 2004).

Here, Commerce's use of San Shing's financial statements is supported by substantial evidence on this record. Commerce concluded (i) San Shing produces comparable merchandise, (ii) San Shing's financial statements were contemporaneous with the period of review ("POR"), and (iii) San Shing's sales were not exclusively or predominantly to the United States market because "over 70 percent of [San Shing's] sales to non-affiliated entities were to either Taiwan or third-country markets during the POR." Final IDM at 5, 7 (internal citations omitted). The lack of a statutory geographical restriction enables Commerce to consider the geographical source of the data as one non-dispositive factor in Commerce's analysis.[3] See 19 U.S.C. § 1677b(e)(2)(B)(iii); see also Issues and Decision Memorandum for the

---

[3] Plaintiff argues that Commerce "failed to engage in any meaningful analysis" of how San Shing's financial statements can be used to approximate sales in Taiwan when there is no showing of "significant sales of comparable merchandise to Taiwan." Pl. 56.2 Mot. at 12; see also Pl. Reply at 3. Plaintiff is incorrect. Commerce analyzes the record and explains San Shing is a Taiwanese producer of subject and comparable merchandise. Final IDM at 5. Commerce considers the relative percentage of sales to Taiwanese and third country markets; non-affiliated sales to the United States, and the availability of record evidence concerning Taiwanese sales. Commerce concludes that San Shing's financial statements "reflect the experience of profitable Taiwanese producers of subject merchandise and other comparable merchandise" because "over 70 percent of [San Shing's] sales to non-affiliated entities were to either Taiwan or third-country markets during the POR." Final IDM at 6—7.

Court No. 24-00055                                                                                              Page 11

Antidumping Duty Investigation of Certain Color Television Receivers From Malaysia, 69 ITADOC 20,592 at cmt. 26 (Apr. 16, 2004) (listing "(2) the extent to which the financial data of the surrogate company reflects sales in the United States as well as the home market"; one of several non-dipositive factors to consider).[4] The statute grants Commerce considerable discretion to choose financial statements on a case-by-case basis. See 19 U.S.C. § 1677b(e)(2)(B)(iii); see also SAA at 4176. Commerce reasonably exercised its discretion explaining there were "no other financial statements on the record submitted for the purpose of CV calculations" which provide "evidence of sales made predominantly in Taiwan." Final IDM at 7.

　　Finally, Plaintiff's argument that the lack of comparability between San Shing's products and Your Standing's steel nails exacerbates problems with the financial statutes is without merit. See Pl. 56.2 Mot. at 11. Plaintiff incorporates an argument about comparability as part of its claim challenging the volume of San Shing's sales in Taiwan, arguing that it is "highly plausible that San Shing's sales to the Taiwan market consisted of sales of this non-comparable merchandise." Pl. 56.2 Mot. at 11. However, Commerce concludes that record evidence shows "San Shing is a Taiwanese producer of fastener products, including nuts, bolts, washers, tooling,

---

[4] Commerce explains in the Final IDM that the "rationale for the exclusion of 'exclusively or predominantly' U.S. sales is the avoidance of using profit rates 'drawn almost exclusively from the alleged dumped sales under investigation,' where the U.S. market is alleged to have been affected by significant dumping." Final IDM at 7 (citing Issues and Decision Memorandum For the Final Affirmative Determination In the Less Than Fair Value Investigation of Certain Oil Country Tubular Goods From the Republic of Korea, 79 ITADOC 41983 at cmt. 1 (Jul. 18, 2014)).

Court No. 24-00055 Page 12

and machinery," which accounted for 83 percent of its sales in 2021 and 87 percent of its sales in 2022, making San Shing a producer of comparable merchandise. Final IDM at 6. The conclusion that San Shing produces comparable merchandise is reasonable based on Commerce's explanation and analysis in the Final IDM. Thus, its choice of San Shing's statements, which reflect comparable merchandise, are contemporaneous with the POR, and were not exclusively or predominantly to the United States market is reasonable and supported by substantial evidence on the record.<sup>5</sup>

---

[5] Plaintiff argues that San Shing's sales of 10 percent in Taiwan is not significant according to Commerce's "general practice" when it selects surrogate financial statements under Subsection (iii). Pl. Reply at 5 (citing Issues and Decision Memorandum For the Final Negative Determination In the Less-than-fair-value Investigation of Wood Mouldings and Millwork Products From Brazil at cmt. 2, 86 ITADOC 70 (Jan. 4, 2021)) ("Wood Mouldings"). However, in Wood Mouldings Commerce had three sets of data and determined that two of the sets "predominantly reflect sales in the home market", so it chose those sets to calculate CV. Id. at cmt. 2. It is the respondents' burden to populate the record with relevant information. See QVD Food Co., Ltd. v. United States, 658 F.3d 1318, 1324 (Fed. Cir. 2011). Here, there were no other financial statements on the record showing sales made predominantly in Taiwan, therefore it could not choose other data as Plaintiff suggests, and its conclusion is reasonable given the information on the record. See Final IDM at 7. Likewise, Plaintiff's citation to the IDM for the Final Affirmative Determination in the Less-Than-Fair-Value Investigation of Certain Fabricated Structural Steel from Canada is also inapposite, as in that case Commerce calculated the CV profit and selling expenses pursuant to Subsection (ii), not Subsection (iii) as Commerce did here. Issues and Decision Memorandum For the Final Affirmative Determination In the Less-than-fair-value Investigation of Certain Fabricated Structural Steel From Canada at cmt. 14, 85 ITADOC 5,373 (Jan. 30, 2020).

## II. Distinct Customer Bases in Financial Statements

Generally, parties must exhaust their administrative remedies to obtain judicial review. McKart v. United States, 395 U.S. 185, 193 (1969) (internal quotations omitted) (citing Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51 (1938)). Requiring exhaustion acknowledges agency expertise, allows agencies to correct mistakes, and promotes efficiency. Woodford v. Ngo, 548 U.S. 81, 89 (2006). A plaintiff must show that it exhausted its administrative remedies, or that it qualifies for an exception to the exhaustion doctrine. Consol. Bearings Co. v. United States, 348 F.3d 997, 1003 (Fed. Cir. 2003) (citing 28 U.S.C. § 2637(d)). When there are a variety of non-dispositive factors an agency may consider, Commerce need not analyze every non-dispositive factor if a plaintiff does not raise an argument regarding a specific factor. See, e.g., Ventura Coastal, LLC v. United States, 736 F.Supp.3d 1342, 1353 (Ct. Int'l Trade 2024) (collecting cases).

As discussed, when calculating CV, as a matter of practice, Commerce considers the "similarity of the customer base." Issues and Decision Memorandum For the Antidumping Duty Investigation of Certain Color Television Receivers From Malaysia, 69 ITADOC 20,592 at cmt. 26 (Apr. 16, 2004). However, Your Standing did not make an argument as to why the customer bases differed in this case before Commerce. In its brief before Commerce, Your Standing argued only that Commerce's use of San Shing's financial statements were inaccurate because: (i) San Shing is primarily devoted to automotive products, and (ii) San Shing does not have

Court No. 24-00055                                                                                                  Page 14

material sales in Taiwan but rather sells mostly in the United States. YSI Agency Brief at 1. These arguments before Commerce raise concerns only about the first and second factors Commerce considers when calculating a CV rate under 19 U.S.C. § 1677b(e)(2)(B)(iii).[6] Nowhere in its brief to the agency did Your Standing raise an argument related to the fourth factor, the similarity of the customer bases. See generally YSI Agency Brief.[7] Instead, Your Standing argues for the first time before this Court that San Shing is "an unsuitable surrogate for the calculation of Your Standing's CV profit and selling expenses" because "it did not sell merchandise to the same types of customers." Pl. 56.2 Mot. at 12 (distinguishing between end users and distributors).

      Plaintiff contends its argument related to San Shing's customer base is an extension of its argument that San Shing's financial statements should not be

---

[6] The first and second factors Commerce considers under Subsection (iii) are the similarity of the potential surrogate company's business operations and products to the respondent and the extent to which the financial data of the surrogate company reflects sales in the United States as well as the home and United States market. Issues and Decision Memorandum For the Antidumping Duty Investigation of Certain Color Television Receivers From Malaysia, 69 ITADOC 20,592 at cmt. 26 (Apr. 16, 2004).

[7] Your Standing did not submit any new information to Commerce following its request for comments and information on the CV profit and selling expense rate. See generally CV Request for Comment and Information. In fact, Defendant-Intervenor submitted factual information for two Taiwanese companies, including San Shing, as well as two Indian companies. Mid Continent Cmts. at 2—5. Your Standing responded by stating Commerce should disregard financial statements from the Indian companies given "the availability of alternative financial data from Taiwan that better reflect actual production and sales by Taiwanese nail producers." See YSI Reply Cmts. at 5.

Court No. 24-00055                                                                                           Page 15

included in the CV calculation.[8]  Pl. Reply at 8.  Although Your Standing argued against the use of San Shing's financial statements before the agency generally, it did not give Commerce the opportunity to address the narrow issue of the different customer bases in its Agency Brief.  Thus, Your Standing may not raise the issue regarding different customer bases before this Court.[9]  See Boomerang Tube LLC v. United States, 856 F.3d 908, 913 (Fed. Cir. 2017) (holding that failing to raise an argument in a brief before Commerce, but then raising it during judicial review, bars a reviewing court from considering the argument).

---

[8] Plaintiff also argues that Commerce, in prior determinations, has declined to calculate CV profit using financial statements in which sales revenue consisted largely of export sales.  Pl. 56.2 Mot. at 10 (citing Issues and Decision Memorandum For the Final Determination In the Antidumping Duty Investigation of Pure Magnesium From Israel at cmt. 8, 66 ITADOC 49,349 (Sept. 27, 2001); Issues and Decision Memorandum For the Less Than Fair Value Investigation of Certain Steel Nails From the United Arab Emirates at cmts. 6—7, 77 ITADOC 17,029 (Mar. 23, 2012)).  However, Commerce makes its CV calculation on a case-by-case basis depending upon the record information. See SAA at 4176.  In the cases Plaintiff cites Commerce weighed the factors it considers when conducting an analysis under Subsection (iii) and, based upon the statements available on the record and the facts of each case, chose the best information available.  See, e.g., Certain Steel Nails from UAE: Final Determination of Sales at Less Than Fair Value, 77 Fed. Reg. 17,029 (March 23, 2012).  Here, Commerce found that, based on the record, San Shing's sales were not exclusively or predominantly to the United States market because "over 70 percent of [San Shing's] sales to non-affiliated entities were to either Taiwan or third-country markets during the POR."  Final IDM at 5, 7 (internal citations omitted).  The Court will not reweigh the evidence.  Downhole Pipe & Equip., L.P. v. United States, 776 F.3d 1369, 1367—77 (Fed. Cir. 2015).

[9] For the same reason Plaintiff's argument that Commerce erred by not disaggregating San Shing's financial statements "based on product category to its various sales market" also fails.  See Pl. 56.2 Mot. at 11.  Your Standing did not raise this argument before Commerce.  See generally YSI Agency Brief.

Court No. 24-00055 Page 16

## CONCLUSION

For the reasons discussed above, Commerce's use of San Shing's financial statements to calculate CV is sustained. Judgment will enter accordingly.

/s/ Claire R. Kelly  
Claire R. Kelly, Judge

Dated:    February 7, 2025  
           New York, New York